STATE OF MAINE                                SUPERIOR COURT
CUMBERLAND, ss                                CIVIL ACTION
                                              DOCKET NO. CV-10-120
                                              $N/M - C u/h - 3/25/200$

RONALD E. GIROUX, SR.,

        Plaintiff

        v.                                    ORDER ON DEFENDANTS' MOTION
                                              FOR SUMMARY JUDGMENT

INDIAN POINT OWNERS
ASSOCIATION,

        Defendant


Before the court is defendant Indian Point Owners Association's motion for summary judgment on all counts of plaintiff Ronald E. Giroux, Sr.'s complaint. For the following reasons, the motion is granted.

BACKGROUND

The following undisputed facts are taken from the defendant's statement of material facts.[1] Since 1988, the plaintiff has owned a cottage unit number 14 located within the Indian Point Seasonal Condominium Properties. (Def.'s S.M.F. ¶ 1.)[2] The defendant is a registered non-profit Maine corporation established pursuant to the Declaration of Condominium dated April 28, 1988 and recorded in the Cumberland

---

[1] The plaintiff failed to file an opposition to the defendant's motion for summary judgment within 21 days. The plaintiff filed no motion for enlargement of time to respond to the defendant's motion for summary judgment. M. R. Civ.P. 7(b)(4). "A party failing to file a timely memorandum in opposition to a motion shall be deemed to have waived all objections to the motion." M.R. Civ. P. 7(c)(3). All of Indian Point's statements of material facts supported by record citations are deemed admitted. M.R. Civ. P. 56(h)(4).

[2] In support of this statement of material fact, the defendant incorrectly cites to paragraph 1 of the plaintiff's complaint. (Def.'s S.M.F. ¶ 1.) Paragraph 2 of the complaint supports this statement. Because this fact is not material to the dispute, the court considers this statement.

1

County Registry of Deeds in Book 8268, Page 124, which operates and manages the Condominium. (Id. ¶ 2; Compl., Ex. B.) The executive board, the body designated in the defendant's by-laws to act on its behalf, primarily governs the defendant's affairs. (Def.'s S.M.F. ¶ 3; Compl., Ex. C.)[3]

Immediately adjacent to the plaintiff's unit is Common Open Space H, which includes a boat launch and turnaround area. (Def.'s S.M.F. ¶ 4.) The plaintiff's unit is subject to an easement encompassing its southwest corner, which provides extra room to maneuver vehicles and trailers in the boat launch and turnaround area. (Id. ¶ 5.) The easement is intended for use by the defendant's members. (Id.) A fence on the plaintiff's Unit demarks the edge of the easement. (Id. ¶ 6.)

On August 1, 1996, the executive board granted the plaintiff special use permission to park on the common element adjacent to his unit. (Def.'s S.M.F. ¶ 15.) The special use allowed only for the parking of a car on the common element. (Id. ¶ 17; Giroux Dep., Ex. 3.) The plaintiff was not permitted to place other items on the common property; the plaintiff did, however, place items on the common element, which he admits was in violation of his special use permit. (Id.; Def.'s S.M.F. ¶¶ 17, 22.) The special use permit was freely revocable by the executive board. (Def.'s S.M.F. ¶ 18; Giroux Dep., Ex. 3.) On December 5, 2006, the executive board revoked the plaintiff's special use permit in response to complaints from other members of the defendant. (Id. ¶¶ 19-20.)

The plaintiff has been cited for several violations of the defendant's rules and regulations and bylaws. (Def.'s S.M.F. ¶ 50.) Specifically, the plaintiff replaced the

---

[3] Mr. Giroux served as a member of the defendant's executive board for at least three years. (Id. ¶ 12.)

split-rail cedar fence on his property with a white vinyl fence in violation of defendant's rules and without approval of the executive board or a vote of any kind. (Def.'s S.M.F. ¶¶ 26-28.) Additionally, the plaintiff cut down trees without the executive board's permission in violation of the defendant's rules. (Id. ¶¶ 13-14, 23-25; Giroux Dep., Ex. 5 § 21.) Finally, the plaintiff has placed obstructions in the easement located on the common element on his property. (Def.'s S.M.F. ¶¶ 7-10.) The plaintiff has not paid the fines assessed for the violations. (Id. ¶ 53.)

The plaintiff filed a four-count complaint. In count I, he requests a declaratory judgment that the defendant has no authority to take certain action; in count II, he alleges a violation of the Maine Condominium Act, 33 M.R.S. §§ 1601, et seq.; in count III, he alleges interruption of quiet use and enjoyment; and in count IV, he alleges intentional and negligent infliction of emotional distress. The defendant now moves for summary judgment on all counts of the plaintiff's complaint.[4]

DISCUSSION

### 1. Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the nonmoving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. See, e.g., Johnson v. McNeil, 2002 ME 99, ¶ 8, 800 A.2d 702, 704.

---

[4] On February 24, 2010, the defendant filed an answer and counterclaim. The defendant requested that the court order the plaintiff to remove the vinyl fence and any obstructions from the common element and enter judgment for the amount of the fines assessed against the plaintiff for violation of the defendant's rules. On April 30, 2010, the defendant filed a second answer with no counterclaim.

Once a properly supported motion is filed, the party opposing a summary judgment must establish a prima facie case for each element of the cause of action in order to avoid a summary judgment. Watt v. Unifirst Corp., 2009 ME 47, ¶ 21, 969 A.2d 897, 902; Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp., 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25. "Failure to properly respond to a statement of material facts permits a court to deem admitted any statements not properly denied or controverted." Dyer v. Dep't of Transp., 2008 ME 106, ¶ 15, 951 A.2d 821, 825-26; M.R. Civ. P. 56(h)(4).

2. Count I: Declaratory Judgment

In count I of his complaint, the plaintiff requests that the court issue a judgment declaring that the defendant had no right to (1) revoke his special use permit without cause; (2) impose violations against him in a random and unfair manner; (3) impose violations for conduct that occurred over ten years ago; or (4) enforce the current violations. (Compl. at 4, ¶¶ i-iv.) The plaintiff also requests that the court instruct the defendant on the voting procedures pursuant to the Rules and Regulations and Bylaws. (Compl. at 4, ¶ v.) Based on the undisputed facts, the executive board revoked the plaintiff's special use permit for cause. (Def.'s S.M.F. ¶¶ 17-20.) The plaintiff's violations were not determined in a random manner, but in response to complaints. (Id.) The plaintiff admits that he has not paid the fines assessed against him, and understands that the defendant was of the opinion that there were violations on his unit and unpaid fines due during the summer of 2007. (Id. ¶¶ 36, 53, 54.) Further, the plaintiff admits that the executive board's votes have been fair, and that his special use permit was freely revocable at any time. (Id. ¶¶ 18, 34).

3. Count II: Violation of the Maine Condominium Act

The plaintiff alleges that the defendant has violated provisions of the Maine Condominium Act, 33 M.R.S. § 1601-101, et seq. Specifically, the plaintiff alleges that

4

the defendant attempted to enforce unconscionable terms in the defendant's rules and regulations in violation of 33 M.R.S. §§ 1601-112 and failed to act in good faith in violation of 33 M.R.S. §§ 1601-113.[5] (Compl. ¶¶ 28-29.) The plaintiff also alleges that the defendant failed to vote on and set forth the penalties against him in writing in violation of the Act. (Compl. ¶ 30.) There is no evidence on the record to indicate that the defendant or its executive board acted in bad faith. The plaintiff admits that he violated Indian Point's rules by placing items on the common element, cutting down trees, and putting up a vinyl fence. (Def.'s S.M.F. ¶¶ 10, 22-25, 26-28.) The record shows that the executive board did vote and communicate with the plaintiff in writing. (Id. ¶¶19-21, 29-30, 32, 34, 50, 55.)

4. Count III: Interruption with Quiet Use and Enjoyment

The plaintiff alleges that the defendant has interfered with the quiet use and enjoyment of his unit and surrounding area. (Compl. ¶¶ 32-38.) This claim is based on conversations with and letters from members of the executive board since 2006. (Def.'s S.M.F. ¶¶ 49-51.) To establish a claim for a private nuisance, the plaintiff must show that:

> (1) '[t]he defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use,' with intent meaning only that 'the defendant has created or continued the condition causing the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow';
>
> (2) there was some interference of the kind intended;
>
> (3) the interference was substantial such that it caused a reduction in the value of the land; and

---

[5] "Every contract or duty governed by this Act imposes an obligation of good faith in its performance or enforcement." 33 M.R.S. § 1601-113 (2011).

(4) the interference 'was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land.'

Johnston v. Me. Energy Recovery Co., Ltd. P'ship, 2010 ME 52, ¶ 15, 997 A.2d 741, 745 (quoting Charlton v. Town of Oxford, 2001 ME 104, ¶¶ 36 & 37 n. 11, 774 A.2d 366, 377-78 (quotation marks omitted)). The undisputed facts show that there was no interference with the plaintiff's land because the executive board acted reasonably pursuant to defendant's rules. (Def.'s S.M.F. ¶¶ 10, 14, 22, 26-27.)

5. Count IV: Intentional or Negligent Infliction of Emotional Distress

The plaintiff alleges that the defendant intentionally caused him emotional distress because it knew that his wife was dying and singled him out for violations before and after her death. (Compl. ¶¶ 42-44, 47.) "[T]o recover on a claim of intentional infliction of emotional distress:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [the defendant's] conduct;

(2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;

(3) the actions of the defendant caused the plaintiff's emotional distress; and

(4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."

Lyman v. Huber, 2010 ME 139, ¶ 16, 10 A.3d 707, 711 (quoting Curtis v. Porter, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23 (internal quotations omitted)).

The undisputed facts in this case demonstrate that the defendant did not know that the summer of 2007 would be the plaintiff's wife's last. (Def.'s S.M.F. ¶ 52.) There is nothing on the record to show that the plaintiff suffered severe emotional distress. (Id. ¶¶ 43-48.) Beginning in January of 2008, the plaintiff visited a psychotherapist,

6

attended a bereavement program, and received treatment from a physician for issues arising out of his wife's death. (Id. ¶¶ 43, 45, 47.) The plaintiff never discussed with the psychotherapist, program members, or the physician his dispute with the defendant. (Id. ¶¶ 44, 46, 48.)[6] The actions taken by the defendant were not extreme and outrageous. (Id. ¶¶ 15, 19-22, 26, 29-30, 32, 34, 36, 53-54.)

In order to prevail on a claim for negligent infliction of emotional distress, a plaintiff must show "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm." Curtis, 2001 ME 158, ¶ 18, 784 A.2d at 25. There is no "general duty to avoid negligently causing emotional harm to others." Id. The "limited circumstances" in which an individual has such a duty are either in "bystander liability actions" or when "a special relationship exists between the actor and the person emotionally harmed." Id. ¶ 19, 784 A.2d at 25. Based on the undisputed facts, there is no special relationship between the plaintiff and the defendant. Compare Bolton v. Caine, 584 A.2d 615, 618 (Me. 1990) (physician-patient relationship); Rowe v. Bennett, 514 A.2d 802, 806-07 (Me. 1986) (psychotherapist-patient relationship).

Further, based on the undisputed facts, the defendant has not committed another tort. Curtis, 2001 ME 158, ¶19, 784 A.2d at 25-26. Finally, as discussed above, the facts do not show that the plaintiff suffered severe emotional distress, an element of a claim of negligent infliction of emotional distress. Id. ¶ 20, 784 A.2d at 26; (Def.'s S.M.F. ¶¶ 43-48.)

---

[6] The plaintiff also claims that after his wife's death, the defendant continues to cause his emotional distress because the defendant will not allow him to have a memorial for his wife on his land. (Compl. ¶ 47.) The undisputed facts show that the plaintiff can move the memorial bench so that it does not obstruct the easement. (Def.'s S.M.F. ¶ 42.)

7

The entry is

> The Defendant's Motion for Summary Judgment is GRANTED. Judgment is entered in favor of the Defendant Indian Point Owners Association and against the Plaintiff Ronald E. Giroux, Sr. on Counts I, II, III, and IV of the Plaintiff's Complaint.

Date: March 25, 2011

Nancy Mills
Justice, Superior Court

CUM-CV-10-120

LAWRENCE SAWYER ESQ
DAWN DYER ESQ
PO BOX 1177
WINDHAM ME 04062

JOHN WHITMAN ESQ
MATTHEW CABRAL ESQ
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME 04112-9545

ME 04101

ERIKA FRANK ESQ
936 ROOSEVELT TRAIL
UNIT 4
WINDHAM ME 04062

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-10-120 /
NM-CUM - 10/26 011

RONALD E. GIROUX, SR.,
    Plaintiff

v.                                              **JUDGMENT**

INDIAN POINT OWNERS
ASSOCIATION,

    Defendant


By order dated March 25, 2011, the court granted the defendant a summary judgment on all counts of the plaintiff's complaint. In its counterclaim, the defendant alleges the plaintiff violated the defendant's Bylaws and Rules and Regulations. Specifically, the plaintiff replaced a split-rail cedar fence on his property with a white vinyl fence; the plaintiff cut down two trees without permission; and the plaintiff placed obstructions in the easement located on the common element on his property. The defendant seeks injunctive relief and payment of fines and penalties, interest, costs, and attorney's fees. Jury-waived trial was held on the defendant's counterclaim.

Based on the 3/25/11 decision on the defendant's motion for summary judgment and the 6/20/11 order on the defendant's order directing further proceedings,

> the Court's Order on the Defendant's Motion for Summary Judgment resolves all issues in the Defendant's Counterclaim with the exception of the amount of damages due to the Defendant from the Plaintiff for fines and attorney's fees and costs of litigation. The issues remaining [for trial on the counterclaim] are injunctive relief preventing the Plaintiff from continuing to violate the Defendant's Bylaws and Rules and Regulations, the amount of fines and penalties assessed against the plaintiff for violations of the Defendant's Bylaws and Rules and Regulations, costs, and attorney's fees.

1

6/20/11 Order.[1]

The defendant began assessing fines of $7.00 per day against the plaintiff in July 2007. (Def.'s Ex. 5.) Because the plaintiff did not pay the fines, the defendant increased the fine rate to $25.00 per day in September 2008. (Def.'s Ex. 6.) The defendant assessed a fine of $500.00 for each of the two trees cut by the plaintiff. (Def.'s Exs. 7–8, 13.) Because the plaintiff did not pay the fines, the defendant increased the fine rate to $100.00 per day in September 2009. (Def.'s Ex. 8.) The defendant notified the plaintiff of the assessments and the plaintiff has not paid the fines. The defendant now seeks $80,064.00 in fines, 12% interest, attorney's fees in the amount of $22,138.50, costs in the amount of $222.86, and injunctive relief. (Amended Sawyer Aff.)

Section K(10) of the defendant's bylaws provides for the levy of reasonable fines for violations of the defendant's declaration, bylaws and rules and regulations. (Def.'s Ex. 14.) Article VI, section B(ii) of the bylaws provides for an award of costs and attorney's fees in any proceeding commenced because a unit owner fails to comply with the declaration, bylaws and rules and regulations and if the Association prevails. (Id.) Paragraph 5 of the defendant's rules and regulations provides for 12% interest on condominium fees in arrears. (Def.'s Ex. 13.)

Maine law allows condominium associations to "[i]mpose charges for late payment of assessments and, after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws and rules and regulations of the association." 33 M.R.S. § 1603-102(a)(11) (2010). This statutory language is similar

---

[1] Accordingly, the majority of the plaintiff's arguments have been waived. (Pl.'s Mem.)

2

to condominium laws in several other states.[2]   A "reasonable fine" is not defined by Maine statutes or case law.

In Connecticut, the Superior Court concluded that the fine must have a relationship to a cost or expense incurred by the association.   Stonington Landing Condo. Ass'n, Inc. v. Totolis, 2009 Conn. Super. LEXIS 3398, *25–26 (Conn. Super. Ct. Dec. 16, 2009) (noting that "where a fine is punitive rather than compensatory the court might properly consider the behavior of the parties in determining its reasonableness.") Additionally, the court noted that because no definition of "reasonable" is provided by statute, courts may look to the ordinary meaning of the words. "Ballentine's Law Dictionary, Third Edition, defines "reasonable" as, among other things, 'Not extreme. Not arbitrary, capricious, or confiscatory . . . What is reasonable depends upon a variety of considerations and circumstances . . .'" Id. at *24–25.

In Stewart v. Kopp, the court agreed that because "the purpose of such a fine is to induce compliance with the condominium documents, much as a fine for civil contempt is intended to induce compliance with a court order, a daily assessment of [a] fine is appropriate . . . ." Stewart v. Kopp, 454 S.E.2d 672, 675 (N.C. Ct. App. 1995). Courts have upheld fines of $100 per day. See id. at 673–74 (permitting $100 per day fine under N.C. statute that limited fines to $150 regardless of reasonableness); see also Park Vill. W. Ass'n ex rel. Canter v. Sugar, 1999 Mass. Super. LEXIS 539, *8 (Mass. Super. Ct. Dec. 8, 1999) (permitting $ 13,704.45 in fees and costs for harboring one dog).

---

[2] Compare Mass. Gen. Laws ch. 183A, § 10(b)(5) (2011) (The association has power "[t]o impose charges or to charge interest for the late payment of common expense assessments or other charges, and to levy reasonable fines for violations of the master deed, trust, by-laws, restrictions, rules or regulations of the organization of unit owners."), and Conn. Gen. Stat. § 47-244(a)(11) (2011) (Association is permitted to "levy reasonable fines for violations of the declaration, bylaws, rules and regulations of the association."), with N.C. Gen. Stat. § 47C-3-102(a)(11) (2011) (The association may "[i]mpose charges for late payment of assessments . . . and levy reasonable fines not to exceed one hundred dollars ($100.00) for violations of the declaration, bylaws, and rules and regulations of the association.").

3

Courts have, however, rejected as unreasonable fines of $25 per day. Stonington Landing Condo. Ass'n, 2009 Conn. Super. LEXIS 3398 at *24 (declaring a $25 per day fine for altering a floor and window unreasonable); see Tr. of the Residences at Chestnut Hill Condo. Trust v. Jacobs, 2006 Mass. Super. LEXIS 386, *20 (Mass. Super. Ct. Aug. 14, 2006) (finding that the $13,500 fine assessed for planting a vegetable garden and digging dog graves reasonable but the $16,283.28 in fees and expenses unreasonable; the court awarded $12,000 in fees and expenses).

In this case, the defendant seeks more than $100,000.00 for the plaintiff's installing a fence, cutting two trees, and placing items in an easement. That is not reasonable but is, instead, extreme and arbitrary.

Although authorized to do so, the defendant made no effort to collect the fines. (Def.'s Ex. 14, Art. VI(B)(i).) If the plaintiff had not filed his complaint, prompting a counterclaim, presumably the fines would still be accruing at the rate of $100.00 per day. See Me. Sch. Admin. Dist. No. 27 v. Me. Pub. Employees Ret. Sys., 2009 ME 108, ¶ 16, 983 A.2d 391, 396 ("Laches is negligence or omission seasonably to assert a right. It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right." (quoting Fisco v. Dep't of Human Servs., 659 A.2d 274, 275 (Me. 1995))). Although the defendant threatened litigation, the defendant took no action until the plaintiff filed a complaint. (Def.'s Ex. 8.)

Assuming, however, that the plaintiff's knowledge of his obligation to pay precludes a determination of prejudice necessary to establish latches, a fine in the amount of $100.00 per day for the fence and easement infractions is unreasonable considering all of the circumstances of this case.

4

A similar analysis applies to the defendant's request for injunctive relief. <u>Fisco v Dep't of Human Servs.</u>, 659 A.2d 274, 276 (Me. 1995) (quoting <u>Sargent v. Coolidge</u>, 455 A.2d 738, 743 (Me. 1981)). Further, the defendant has not shown irreparable injury. <u>Ingraham v. Univ. of Maine</u>, 441 A.2d 691, 693 (Me. 1982).

The court may consider the behavior of the parties and the circumstances of this case. The court will impose a fine of $5.00 per day from July 15, 2007 until the date of this judgment for the fence and easement infractions. This fine totals $7,820.00. The fine for the cutting of two trees is $1,000.00. (Def.'s Ex. 13.)

The defendant submitted invoices for attorney's fees through July 26, 2011 only. Further, the bylaws provide for recovery of reasonable attorney's fees and "the costs of the proceeding." Attorney's fees of $16,986.00 are awarded plus costs as allowed by rule and statute.

Interest at the rate of 12% is allowed on condominium fees, due April 1 of each year, that are in arrears. No interest rate is specified for fines.

The entry is

> Judgment is entered in favor of the Defendant Indian Point Owners Association and against the Plaintiff Ronald Giroux on the Defendant's Counterclaim in the amount of $8,820.00 plus attorney's fees of $16,986.00, plus prejudgment interest at the rate of 3.41% and post-judgment interest at the rate of 6.30%, plus costs.

The Defendant's Request for Injunctive Relief is denied.

Date: October 26, 2011

Nancy Mills
Justice, Superior Court

5

RONALD E GIROUX SR  VS INDIAN POINT OWNERS ASSOCIATION
UTN:AOCSsr  -2010-0025744                  CASE #:PORSC-CV-2010-00120
---------------------------------------------------------------------

RONALD  E. GIROUX, SR                                    PL
     FRANK, ERIKA L.    Tel# (207) 892-8484
          936 ROOSEVELT TRAIL UNIT 4 WINDHAM ME 04062


INDIAN POINT OWNERS ASSOCIATION                          DEF
     SAWYER, LAWRENCE   Tel# (207) 892-2112
          PO BOX 1177 WINDHAM ME 04062
     DYER, DAWN D.    Tel# (207) 892-2112
          PO BOX 1177 WINDHAM ME 04062