2009 ME 108

**MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 27**

v.

**MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM.**

Supreme Judicial Court of Maine.

Argued: Sept. 16, 2009.
Decided: Nov. 5, 2009.

Jeffrey T. Piampiano, Esq. (orally), Drummond Woodsom & MacMahon, Portland, ME, for Maine School Administrative District No. 27.

Janet T. Mills, Atty. Gen., Christopher L. Mann, Asst. Atty. Gen. (orally), Augusta, ME, for the Maine Public Employees Retirement System.

Panel: ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

LEVY, J.

[¶ 1] The Superior Court (Kennebec County, *Jabar, J.*) affirmed the decision of the Board of Trustees for the Maine Public Employees Retirement System that Maine School Administrative District No. 27 was responsible for back contributions, plus interest, on behalf of six employees for time periods when the employees should have been, but were not, enrolled in the system. In this appeal, the District argues that the court erred because: (1) the System's assessments of the District for the back contributions are barred by the six-year statute of limitations for civil actions; (2) the System's assessments are barred by the doctrine of laches; and (3) the System lacks the authority to assess and collect these back contributions from the District. We affirm the judgment.

## I. BACKGROUND

[¶ 2] This case concerns six secretaries employed by the District between 1973 and 1987 for whom the District failed to pay retirement contributions to the System. Although at the time the District was required by statute to enroll the six secretaries in the State Retirement System, *see* 5 M.R.S.A. §§ 1062(2)(A), 1091(5) (1964), the District instead withheld Social Security contributions and submitted them to the Social Security Administration. As the Board found, the District acted to correct the error "piecemeal" over seven years "from the time proper deductions were begun for the first secretary until the correction was made for the last one."

[¶ 3] The System first became aware of the District's error in November 2000, when three of the secretaries asked the System about purchasing service credit for periods prior to their enrollment in the System. The following month, the System wrote to the District requesting data for the employees, as well as information on any other secretaries employed by the District prior to July 1, 1989; the period when secretaries were covered by the definition of "teachers" for System membership purposes. As the Superior Court noted, it took the District over two years to respond to the System's request for information.

[¶ 4] In June 2003, the System informed the District that it owed $34,752.12 in back contributions and interest for the three employees. The District paid the assessment in July 2003, while reserving its right to appeal.

[¶ 5] Eventually, the System identified three other secretaries for whom the District had similarly failed to make contributions, and in December 2003 assessed the District an additional $46,560.97 in back contributions. The District did not pay this amount and requested review of the assessment by the System's Executive Director in January 2004.

[¶ 6] After some delay,[1] in January 2007, the Executive Director affirmed the System's decision to assess back contributions for all six employees. The District appealed the Executive Director's decision to the Board, which ultimately affirmed the decision in April 2008. The District then appealed to the Superior Court, which affirmed the Board's decision. This appeal followed.

## II. DISCUSSION

■ [¶ 7] "When the Superior Court acts in an intermediate appellate capacity pursuant to M.R. Civ. P. 80C, we review [the administrative] agency's decision directly ... for legal errors, an unsustainable exercise of discretion, or unsupported findings of fact." *Tremblay v. Land Use Regulation Comm'n*, 2005 ME 110, ¶ 13, 883 A.2d 901, 904 (quoting *S.D. Warren Co. v. Bd. of Envtl. Prot.*, 2005 ME 27, ¶ 4, 868 A.2d 210, 213). The party seeking to overturn the Board's action bears the burden of persuasion on appeal. *Zegel v. Bd. of Social Worker Licensure*, 2004 ME 31, ¶ 14, 843 A.2d 18, 22.

[¶ 8] The District contends that: (A) the System's assessments are barred by the statute of limitations pertaining to civil actions; (B) the System's assessments, even if timely, are barred by the equitable doctrine of laches; and (C) the System

1. Review by the Executive Director was delayed pending the Board's decision in an unrelated appeal concerning similar circumstances. That decision, issued by the Board in October 2004, provided that in certain circumstances, assessments for back contributions may be waived. Over the next two years, the District and System corresponded about whether the situation of the District met the criteria for a waiver. In January 2007, the Executive Director decided that the waiver criteria were not met in this case.

does not have the authority to assess back contributions from the District as an employer.

## A. Statute of Limitations

■ [¶ 9] The District asserts that the System's assessments are barred by the six-year statute of limitations for civil actions because all of the alleged misdirection of funds occurred between 1972 and 1989, and the System did not issue its initial assessment until June 2003. *See* 14 M.R.S. § 752 (2008).[2] The System responds that it has not brought a "civil action" and therefore the statute of limitations does not apply.[3] Whether a claim is time-barred is a question of law we review de novo. *Francis v. Stinson*, 2000 ME 173, ¶ 56, 760 A.2d 209, 220. The specific issue of whether an administrative procedure constitutes a "civil action" is a matter of first impression in Maine.

[¶ 10] The Superior Court, noting that 5 M.R.S. § 17203 (2008) provides that delinquent payments may be recovered by action in a court, and citing the Black's Law Dictionary definition of "civil action," determined that the System's assessments constitute a civil action subject to 14 M.R.S. § 752.[4] The Superior Court appears to conclude that the assessments were intended to "protect a private or civil right" under the plain meaning of "civil action," and that the System must consider its Board a "court of competent jurisdiction," or it would not have rested its decision on section 17203, which provides no other mechanism for recovering delinquent payments. The Superior Court ultimately decided, however, that 14 M.R.S. § 752 did not bar the System's assessments due to the doctrine of *nullum tempus*, which provides that statutes of limitation do not apply to State actions.

[¶ 11] The Superior Court's characterization of the System's assessments as a civil action finds some support in the Maine Administrative Procedure Act, which provides that when a final agency action is appealed to the Law Court, "[t]he appeal shall be taken as in *other civil cases.*" 5 M.R.S. § 11008 (2008) (emphasis added). However, the Act also provides that the Superior Court may review "final agency action." *See* 5 M.R.S. §§ 11001–11008 (2008) (emphasis added). These provisions, taken together, do not equate "agency action," final or otherwise, with civil actions. Indeed, for the reasons we will explain, a review of the agency action in this case establishes that a civil action was not commenced until the District filed its appeal with the Superior Court under M.R. Civ. P. 80C.

[¶ 12] The System did not commence this action in a judicial proceeding pursuant to 5 M.R.S. § 17203(1)(B)(2). Rather, it acted administratively to collect delinquent payments from the District. Subse-

---

2. Title 14 M.R.S. § 752 (2008) provides:
   All *civil actions shall* be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state, or of a justice of the peace in this State, and except as otherwise specially provided.
   (Emphasis added.)

3. The System also contends in the alternative that the doctrine of *quod nullum tempus occurrit regi* ("time does not run for the King," or in this case, the State) precludes the appli-

cation of the statute. This contention presupposes that the System's assessment constitutes a civil action otherwise governed by 14 M.R.S. § 752; thus, analysis regarding the System's action must precede analysis of *nullum tempus*.

4. The 7th Edition of Black's Law Dictionary defines "civil action" as "[a]n action brought to enforce, redress, or protect a private or civil right." Black's Law Dictionary 30 (7th ed. 1999).

quent to the Board's determination, the District appealed the final administrative decision pursuant to Rule 80C and the Maine Administrative Procedure Act. It was the District, and not the System, that commenced a civil action. The Legislature has not enacted a statute of limitations applicable to the type of administrative enforcement in this case. *See, e.g.,* 32 M.R.S. § 10015(6) (2008) (limit on the enforcement actions brought by the Board of Underground Storage Tank Installers against certified persons concerning underground oil tanks); 36 M.R.S. § 612(5) (2008) (limit on time period of perfection of a tax lien after the lien arises); 38 M.R.S. § 347–A(8) (2008) (limit on air and wastewater discharge enforcement actions brought by Department of Environmental Protection or Attorney General).

[¶ 13] Because the Maine Administrative Procedure Act roughly mirrors the Federal Administrative Procedure Act, particularly regarding judicial review of final agency action,[5] interpretation of the federal act offers useful guidance. Under the federal APA, appeal of a final agency action is considered a civil action; as such, the appeal is subject to the applicable federal statute of limitations regarding civil proceedings. *See, e.g., Narragansett Elec. Co. v. United States EPA,* 407 F.3d 1, 5 (1st Cir.2005) ("[T]he standard statute of limitations for APA actions is six years."); *Trafalgar Capital Assocs. v. Cuomo,* 159 F.3d 21, 34 (1st Cir.1998) ("A complaint under the APA for review of an agency action is a civil action that must be filed within the six year limitations period set forth in 28 U.S.C. § 2401(a)."). As one court has explained: "[A] cause of action under the APA accrues when the person challenging the administrative action can institute and maintain a suit in court. That is, when there has been a final agency action." *Blanco v. United States,* 433 F.Supp.2d 190, 197 (D.P.R.2006) (citation marks omitted).

■ [¶ 14] Agency decisions are not considered civil actions, even if they are subsequently appealed to a federal court pursuant to the APA. In *BP Am. Prod. Co. v. Burton,* 549 U.S. 84, 94, 127 S.Ct. 638, 166 L.Ed.2d 494 (2006), the Court held that a six-year limitations period applied only to "court actions" and not administrative proceedings, and thus did not apply to the administrative orders issued for the collection of gas lease royalties. Taken together, these federal cases demonstrate that it is the aggrieved party's appeal to the federal court system that commences a civil action.

■ [¶ 15] Thus, using federal law as a guide, the District, not the System, has initiated a civil action subject to a period of limitations. Neither the System's administrative assessment against the District, nor the Board's review of the same, were civil actions subject to the six-year statute of limitations.[6]

---

**5.** Procedure for judicial review of a final agency decision is codified at 5 U.S.C.S. §§ 701–706 (2009), and the provision governing reviewable action is specifically codified at 5 U.S.C.S. § 704 (2009), which provides in relevant part:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.

Contrast with 5 M.R.S. § 11001 (2008), which provides in relevant part:

> [A]ny person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter.

**6.** Because we conclude that the civil statute of limitations does not apply to this case, we need not address the applicability of *nullum tempus.*

## B. Laches

■ [¶ 16] The District also argues that the doctrine of laches bars the System from collecting any money owed.

> Laches is negligence or omission seasonably to assert a right. It exists when the omission to assert the right has continued for an unreasonable and unexplained lapse of time, and under circumstances where the delay has been prejudicial to an adverse party, and where it would be inequitable to enforce the right.

*Fisco v. Dep't of Human Servs.*, 659 A.2d 274, 275 (Me.1995) (quoting *Leathers v. Stewart*, 108 Me. 96, 101, 79 A. 16, 18 (1911)). We review the equitable issue of whether laches applies de novo. *Van Dam v. Spickler*, 2009 ME 36, ¶ 12, 968 A.2d 1040, 1044.

■ [¶ 17] In this case, the System responded promptly to the first real indication it received that the District might have made an error. Upon receiving indication of an anomaly in November 2000, it sent an inquiry to the District the following month.[7] In contrast, the District took almost eight years to correct all of its clerical issues, took two years to respond to the System's requests for information, and did not voluntarily notify the System of any of these mistakes when they occurred. Because the District was primarily responsible for the delay in this case, its laches defense fails. *See Glew v. Glew,*

1999 ME 114, ¶ 14, 734 A.2d 676, 681–82 (noting that when a delay is caused by the opposing party, it is not "unexplained or unreasonable" and a laches defense therefore fails). Additionally, laches requires a showing that the delay in question was prejudicial to the adverse party. *See Conservatorship of Jackson*, 1998 ME 256, ¶ 9, 721 A.2d 177, 179. There has been no showing of prejudice in this case.

## C. Authority to Assess Back Contributions from the District

[¶ 18] Because we are satisfied that the System's assessments are not barred by law or equity, we turn to the substantive issue of the System's authority to assess back contributions from the District. In its decision, the Board relied upon 5 M.R.S. § 17203 (2008) and 5 M.R.S. § 17154(9) (2008) to determine that the System had authority to collect back contributions from the District. Section 17203(1) requires a district's chief administrative officer to "cause to be deducted from the compensation of each member on each payroll of the department, school or participating local district for each payroll period, the appropriate percentage of earnable compensation to be contributed" 5 M.R.S. § 17203(1). It also provides that delinquent payments may be subject to late fees or legal actions in courts, or "deducted from any other money payable to that school administrative unit."[8] Sec-

---

7. The District argues that because the System had the ability to audit the District, and conducted one such audit in 1994, it had the ability to enforce its claim earlier than 2000. However, the results of the 1994 audit are unknown, because the audit documents were subsequently destroyed in a fire. The System also notes that by 1994 the errors had been fixed, and thus it had no way of knowing that the District had employees who should have been entered into the System earlier than they were.

8. Title 5 M.R.S. § 17203 (2008) provides in its entirety:

> **1. Certification and deduction.** The board shall certify to the chief administrative officer of each department, school and participating local district and the chief administrative officer shall cause to be deducted from the compensation of each member on each payroll of the department, school or participating local district for each payroll period, the appropriate per-

tion 17154(9) states that actuarial and administrative costs resulting from improper application of retirement systems statutes "must be charged to and paid by the employer that … improperly applied the statutes or rules." It further provides,

"The employer is liable for amounts not recovered from the retiree and for costs incurred in resolving problems caused by the employer's actions." [9] The Board concluded that these statutes authorized the

centage of earnable compensation to be contributed.

**A.** Amounts deducted from the compensation of state employees must be credited to the State Employee and Teacher Retirement Program in the same manner and at the same time that employer charges are credited to that program as provided by section 17154, subsection 5.

**B.** Amounts deducted from the compensation of teachers must be paid to the State Employee and Teacher Retirement Program by the chief administrative officer of each school administrative unit monthly in accordance with rules of the board. Delinquent payments due under this paragraph:

(1) May be subject to a late fee as directed by the board and interest at a rate, to be set by the board and paid by the school administrative unit, not to exceed regular interest by 5 or more percentage points;

(2) May be recovered by action in a court of competent jurisdiction against the school administrative unit; or

(3) May, at the request of the retirement system, be deducted from any other money payable to that school administrative unit.

**C.** Payment of members' contributions to the Participating Local District Retirement Program by participating local districts is governed by sections 18301 to 18303.

**2. Manner of deduction.** The amounts deducted under subsection 1, when deducted, shall be:

**A.** Paid into the Members' Contribution Fund; and

**B.** Credited to the individual account of the member from whose compensation the deduction was made.

**3. Member's consent.** It is deemed that every member has consented to allow the chief administrative officer of the member's department, school or participating local district to make deductions from the member's compensation or to make pick-up con-

tributions to satisfy the member's required contribution to the applicable retirement program.

**4. Discharge of claims.** Payment of compensation to a member, minus the adjustment to compensation resulting from a deduction or employer pick-up contributions under this section, shall be a complete discharge of all claims and demands based on the services rendered by the member during the period covered by the payment, except for any claims or demands for the benefits provided under this Part.

**5. Reduction of minimum compensation.** The deductions under this section shall be made notwithstanding that the minimum compensation provided for by law for any member is reduced by the deduction.

9. Title 5 M.R.S. § 17154(9) (2008) provides in its entirety:

**9. Improper application of statutes.** Notwithstanding the other provisions of this section, additional actuarial and administrative costs resulting from omissions or misrepresentations by an employer as to a member's earnings, service or service credits or from improper application of retirement system statutes or rules regarding earnings, service or service credits must be charged to and paid by the employer that omitted information, provided misinformation or improperly applied the statutes or rules, unless the omission, misrepresentation or improper application results from erroneous information provided by the retirement system. The employer is liable for amounts not recovered from the retiree and for costs incurred by the retirement system in resolving problems caused by the employer's actions and in addition may be subject to administrative fees, penalties and interest under section 17105, subsection 5. For purposes of this subsection, "employer" means any department of State Government, school administrative unit or participating local district.

System to collect back contributions from the District.

[¶ 19] The District argues that: (1) sections 17203 and 17154(9) are not applicable, because section 17203 requires employees, not employers, to correct contribution errors, and section 17154(9) applies only to actuarial costs, which it construes literally to mean "costs based on the services of an actuary"; and (2) because the statutes were not enacted until after 1989, they may not be applied retroactively against the District for payments due prior to its enactment.

### 1. Application of Section 17203 and Section 17154(9)

■ [¶ 20] The District asserts that responsibility regarding amounts deducted under section 17203 rests with the employees rather than the District and that the System does not have the authority to shift that burden to the District. We disagree.

[¶ 21] The plain language of the statute does not limit the District's responsibility to merely collecting and withholding contributions. Viewing section 17203 as a whole, the statute imposes an unequivocal duty on the District to deduct certain amounts from employee salaries and to forward that deduction to the System. Subsection 17203(1) states that "the chief administrative officer *shall* cause [the relevant compensation] to be deducted," (emphasis added) while subsection 17203(1)(B) states that "[a]mounts deducted ... must be paid to the State Employee and Teacher Retirement Program *by the chief administrative officer of each school administrative unit*" (emphasis added). Further, the relevant language under subsection 17203(1)(B) generally refers to "[d]elinquent payments due under this paragraph." This logically refers to any instances where the District does not fulfill its obligation to deduct and submit funds to the System, including instances where the District deducted payments and erroneously directed them elsewhere.

[¶ 22] Section 17203 grants the System the authority to assess employers for back contributions to the System. Because section 17203 grants this authority, we need not determine whether the back contributions assessed also constitute "additional actuarial and administrative costs" pursuant to section 17154(9).

### 2. Applicability of Section 17203 and Section 17154(9)

[¶ 23] The District argues that application of sections 17203 and 17154(9) would be improperly retroactive. In support of its argument, it notes that it erroneously classified employees from July 1973 to March 1989, and that it corrected the erroneous classifications before either section was enacted. *See* P.L. 1989, ch. 95, § 3 (effective Sept. 30, 1989); P.L. 1991, ch. 857, § 1 (effective June 30, 1992). The District further argues that the System had no preexisting authority to collect monies owed, and that the System has never been able to collect back contributions directly from the District. "The pivotal question," the District thus notes, "is whether it is appropriate or lawful to *imply* an agency right to shift employee/member contribution obligations to an employer, in the face of an *express* statutory scheme requiring that those amounts to be paid by the member/employee."

[¶ 24] The District's analysis fails to recognize that at all relevant times, it was required by statute to deduct employee contributions and submit them to the System. *See* 5 M.R.S.A. §§ 1062(2)(A), 1091(5) (1964). The District not only failed to make the required employee contributions; it actually deducted Social Security contributions from the employees' pay. The System did not require the Dis-

trict to fund employee contributions to it; it assessed the District for its failure to deduct and then forward the employee contributions, as required by statute.

[¶ 25] The System's general authority to collect monies owed predates the enactment of sections 17203 and 17154(9). *See* 5 M.R.S.A. § 1062(2)(A) (1964). When a statute "d[oes] not alter existing rights or obligations, [but] merely clarifie[s] what those existing rights and obligations ha[ve] always been," the statute is not retroactive in its operation. *See Levy v. Sterling Holding Co.,* 544 F.3d 493, 506 (3rd Cir.2008). As we have previously observed, "An authorizing statute grants [a public body] such powers as may be fairly implied from its language ... [and] [t]he public body may employ means appropriate for the purpose of carrying out the authority directly conferred upon it." *State v. Fin & Feather Club,* 316 A.2d 351, 355 (Me.1974) (quoting *Lynch v. Commissioner of Ed.,* 317 Mass. 73, 56 N.E.2d 896 (1944)). The District's articulation of the question presented as whether the System may "shift" responsibility for funding contributions to the District is inapposite. Instead, the appropriate questions are: (1) whether the System had implied authority to enforce, through administrative action, the District's preexisting duty to deduct and submit the employee contributions to the System; and (2) whether the System had the additional implied authority to assess the District for late fees such as interest. If the System had this implied authority, sections 17203 and 17154(9) are properly regarded as clarifying the System's preexisting authority.

[¶ 26] Overall, the Board has long been charged with "[t]he general administration and responsibility for the proper operation of the retirement system *and for making this chapter [governing the retirement system] effective*" 5 M.R.S.A. § 1031(1) (Supp. 1972) (emphasis added); 5 M.R.S. § 17103(1) (2008). This fairly implies that the Board has authority to enforce the payment of delinquent submissions. A statute is of little effect if it cannot be enforced. Further, given the overall administrative regulatory scheme of Chapter 5, it is reasonable to infer that a power to enforce is implicit within the overall regulatory scheme. Therefore, the System had implied authority to enforce, through administrative action, the payment of delinquent submissions.

[¶ 27] The Legislature also gave broad authority and discretion to the Board in managing the System:

> [I]t is expressly provided that the board of trustees shall in all cases make the final and determining decision in all matters affecting the rights, credits and privileges of all members of the system ... [and] shall make the final and determining decision on all matters pertaining to administration, actuarial recommendations, the reserves and the investments of the system.

5 M.R.S.A. § 1032 (Supp.1972); *see also* 5 M.R.S. § 17103(6), (7) (2008). The assessment of late fees for delinquent payments, especially assessment for interest, affects the rights of the employee members. This language reasonably suggests that the Board had the ability to assess the District both for deductions currently owed and for interest or additional fees on those deductions.

[¶ 28] Thus, review of preexisting law establishes that the System had implied authority to assess the District for delinquent payments, including assessment of additional fees such as interest, prior to the enactment of sections 17203 and 17154(9). The application of these sections is not improperly retroactive because they merely clarify the System's preexisting authority. We are not persuaded by and do

not address the District's remaining arguments.

The entry is:

Judgment affirmed.