**2012 ME 95**

**Ellen M. GOODRICH**

v.

**MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM.**

Supreme Judicial Court of Maine.

Argued: Oct. 13, 2011.
Reargued: May 8, 2012.
Decided: July 17, 2012.

victed parent kept the children away from the other parent for extended periods of time.

William J. Schneider, Attorney General, and Christopher L. Mann, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellant Maine Public Employees Retirement System.

Donald F. Fontaine, Esq. (orally), Portland, for appellee Ellen M. Goodrich.

Panel: ALEXANDER, LEVY, SILVER, MEAD, GORMAN, JABAR, and CLIFFORD, JJ.

MEAD, J.

[¶ 1]  Maine Public Employees Retirement System (the System) appeals from a judgment of the Superior Court (Kennebec County, *Murphy, J.*) reversing the decision of the System's Board of Trustees that denied Goodrich basic life insurance coverage under the group life insurance plan administered by the System.  We vacate the judgment of the Superior Court

in part and remand for entry of a judgment (1) vacating the decision of the Board, and (2) remanding to the Board with instructions to provide Goodrich with prospective basic life insurance coverage after she pays the back premiums accrued to date.

## I. FACTS AND PROCEDURE

[¶ 2] The facts as established in the administrative record for the purposes of this appeal pursuant to M.R. Civ. P. 80C are as follows: At the time of her initial eligibility for group life insurance coverage pursuant to her employment with a Maine school district in 1995, Ellen Goodrich was not given an application form for basic life insurance coverage as provided by 5 M.R.S. § 18058(1) (2010).[1] Consequently, she never submitted any written documents to the System either applying for, or refusing, coverage or authorizing her employer to deduct premiums from her salary. Although Goodrich was initially

insured beginning on the first day of the month following one month of employment after she became eligible pursuant to the version of the statute in effect at the time, she became uninsured because premiums were never deducted from her salary.[2]

[¶ 3] Goodrich was unaware of any of these circumstances until September 2006, when the System informed her by letter that it could not determine whether she was ever given an application when she first became eligible in 1995. Because her coverage had lapsed due to the failure to deduct premiums from her salary, the System applied the version of its Rule 601 § 4(C) that was in effect in 1995 and 2006[3] and offered Goodrich the opportunity to gain coverage at that time by submitting an application and (1) paying back premiums from her original date of eligibility or the date payments were last taken; (2) filing evidence of insurability; or (3) waiting for open enrollment, although at that time there were no plans for open enroll-

---

1. The statute has since been amended pursuant to P.L.2011, ch. 449, §§ 10–12 (effective Sept. 28, 2011), but the current version of the statute maintains the requirement that eligible employees complete an application within thirty-one days of initial eligibility. Although the statute does not specify what entity should supply the employee with the application, the parties seem to agree that it is the employer's responsibility.

2. The version of the statute in effect in 1995 and 2006 provided that enrollment in basic group life insurance coverage was automatic upon initial eligibility. The current version of the statute requires an employee to submit an application electing coverage before coverage becomes effective. *Compare* 5 M.R.S. § 18058(1) (2010) *with* 5 M.R.S. § 18058(1) (2011). Current Maine Public Employees Retirement System rules and the rules in effect in 1995 and 2006 provide that coverage lapses at the end of the last period for which premiums are paid, subject to a thirty-one-day grace period. *See* 12 C.M.R. 94–411 601 § 4(A) (effective Dec. 18, 1983); 12 C.M.R. 94–411 601–2 § 4(1) (2009).

3. At the time, Rule 601 § 4(C) provided:

Whenever it is determined by the Executive Director that, through an error by Maine State Retirement System personnel or payroll personnel, deductions for insurance are not taken, the participant will be given the option to:
1. Pay back premiums from date of eligibility or date last payments were taken;
2. File evidence of insurability with coverage effective on the date approved by the insurance company from which the policy was purchased; or
3. Wait for an open enrollment.

12 C.M.R. 94–411 601 § 4(C) (effective Dec. 18, 1983). Rule 601 was amended in 2008 to eliminate the option of waiting for open enrollment. *See* 12 C.M.R. 94–411 601 § 4(4) (effective Jan. 20, 2008). Because the current rule incorporates the former rule's requirements for back payments or evidence of insurability in order to gain coverage, our analysis of the former rule applies equally to the current rule.

ment "in the near future." The System also stated that it would consider Goodrich to have refused coverage if she did not respond to the offer within thirty days.

[¶ 4] Goodrich did not respond to the offer within thirty days. Rather, in January 2007, she submitted an application for basic life insurance, but advised the System that she did not wish to make back payments. In November 2007, Goodrich submitted an evidence-of-insurability form, but in January 2008, Aetna, the insurance provider, deemed her uninsurable for medical reasons. In February 2008, Goodrich asked the System to provide her with basic life insurance coverage on a prospective basis without requiring her to pay back premiums or to submit evidence of insurability. The System issued a final decision in December 2008 denying her request. Goodrich appealed to the System's Board of Trustees in January 2009.

[¶ 5] In February 2010, the Board found that Goodrich had refused the System's 2006 offer by not timely responding and that, as an employee who had refused insurance, Goodrich was required to provide evidence of insurability pursuant to 5 M.R.S. § 18058(2)(C) (2010).[4] Because she was unable to do so, the Board denied her coverage. Goodrich timely filed a petition for review of final agency action pursuant to M.R. Civ. P. 80C. The Superior Court held that Goodrich's untimely response to the 2006 offer did not constitute a refusal because sections 18058(2) and (2)(A) require a written waiver of coverage. The

court also held that Rule 601 and the 2006 offer for coverage are invalid because both are inconsistent with the automatic, unconditional coverage provided by the statutory scheme. The court ordered the System to offer Goodrich basic group life insurance coverage on a prospective basis without requiring her to file evidence of insurability or to pay back premiums.

## II. DISCUSSION

[¶ 6] We review the Board's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶¶ 13–14, 926 A.2d 1197. Statutory construction is a question of law we review de novo. *Id.* ¶ 11. In interpreting a statute, we begin with its plain language to determine whether it is ambiguous. *Id.* ¶ 12. When a statute administered by an agency is silent or ambiguous on a particular point, we will review whether the agency's interpretation of the statute is reasonable and uphold its interpretation unless the statute plainly compels a contrary result. *Id.* ¶ 11.

[¶ 7] Title 5 M.R.S. § 18058(1) (2010) establishes an entitlement to unconditional, automatic basic life insurance for eligible public employees upon commencement of employment. An employee need not demonstrate insurability or initially apply for coverage. As long as premiums are paid, presumably via payroll deduction, basic coverage will continue unabated.[5] The

---

4. This section provides: "Any employee who does not want to be insured or who cancels insurance coverage may subsequently apply for insurance, but must produce evidence of insurability at the employee's own expense and in accordance with the requirements of the insurance underwriter." 5 M.R.S. § 18058(2)(C) (2010). This section was not changed by the 2011 amendments.

5. Although the record does not establish the historical basis of this contractual benefit, it is likely the result of an agreement between the State and an insurance underwriter whereby the insurer agrees to provide basic life insurance to all new public employees without proof of insurability in return for being the sole provider of group insurance to the State of Maine.

statute further provides that "[e]ach employee shall complete an application for insurance coverage within 31 days of becoming eligible." *Id.* It is silent, however, on the subject of what happens to the employee's automatic basic coverage if an application is not filed.[6]

[¶ 8] The statute requires a written waiver of coverage in two instances. An employee who wishes to refuse coverage must do so in writing during the initial eligibility period pursuant to section 18058(2), which provides:

> Any employee not wanting to be insured under this subchapter, at the time the employee first becomes eligible, shall, on the application form, give written notice to the employee's employing officer and to the retirement system that the employee does not want to be insured.

5 M.R.S. § 18058(2) (2010). Additionally, an employee who wishes to cancel coverage after having been insured must do so in writing pursuant to section 18058(2)(A), which provides:

> If after being insured, the employee wishes to cancel or reduce coverage, written notice must be given by the employee to the employee's employing officer and to the retirement system.

5 M.R.S. § 18058(2)(A) (2010).

[¶ 9] The key historical facts in this case are undisputed by the parties to this matter: (1) Ellen Goodrich was never advised by her employer of the availability of insurance under this section; (2) she did not complete an application for insurance coverage within thirty-one days of becoming eligible; (3) she never opted out of coverage in writing; and (4) because no premiums were received, coverage was terminated by the underwriter. Goodrich now asks that the basic life insurance coverage that was unconditionally available to her seventeen years ago be established prospectively, that she not have to pay back premiums for that seventeen-year period, and that she not be required to establish proof of insurability.

[¶ 10] Although section 18058 does not address this circumstance directly, it offers certain principles that inform the analysis. First, it provides for unconditional basic life insurance coverage "beginning on the first day of the month following one month of employment after the employee becomes eligible." 5 M.R.S. § 18058(1). Second, the entitlement to this automatic basic coverage can be relinquished in only one way—a written opt-out submitted by the employee to the employer and the retirement system. 5 M.R.S. § 18058(2). Absent a written opt-out, the fact that basic life insurance coverage may have been cancelled for non-payment of premiums does not alter the fact that the *entitlement* to this benefit, established upon initial employment, still remains. This fact is underscored—not contradicted—by Rule 601, which allows an employee, in the event of non-payment of premiums,[7] to rewind the clock, pay the premiums that should have been paid, and receive unconditional basic coverage.

---

6. Failure to complete an application for insurance within thirty-one days results in certain consequences regarding supplemental and dependent insurance, neither of which are at issue here. *See* 5 M.R.S. § 18058(1)(C) (2010).

7. This opportunity is limited to instances where the failure to deduct premiums from an employee's pay is attributed to errors by Maine Public Employees Retirement System personnel or payroll personnel. For the purposes of this analysis, we have no difficulty in equating Goodrich's employer's alleged failure to notify her of her eligibility for coverage with a failure by the employer's payroll personnel to make appropriate premium deductions.

[¶ 11]   The System argues that Goodrich's failure to respond to its offer to allow her to pay back premiums, and the fact that her subsequent application for prospective coverage was denied, qualify as "opt-outs" or refusals, thereby voiding, *ab initio,* her entitlement to unconditional basic coverage.   However, as neither event qualifies as a written declination under section 18058(2), her eligibility remains, and she has the option, pursuant to Rule 601, to pay back premiums and be restored retroactively to her 1995 status.   The fact that she was never afforded notice of the opportunity to opt into the basic coverage plan allows her to exercise, retroactively, the insurance prerogative that was available to her as a new employee.[8]   As long as her future premiums are paid in a timely fashion, she will continue to receive the basic coverage provided in section 18058(1).

■   [¶ 12]   Goodrich argues that she should be relieved of the obligation to pay back premiums that would have accrued during the period when she was not covered by basic insurance.   She notes that she is blameless for this state of affairs.[9] Her argument fails for two reasons, however.   First, as discussed above, pursuant to Rule 601, Goodrich's option to retroactively obtain unconditional basic coverage is subject to her payment of the same premiums that she would have paid if circumstances were rewound to the date that she first became eligible.   Second, as the System notes, because benefits are drawn from premiums and premiums are calculated based on the insurer's risk as it exists at the time it offers coverage, it would be unworkable for an insurance carrier to prospectively offer the same unconditional coverage after employees age or develop significant medical issues as it does when they first begin employment, at a time when they presumably posed less risk. The statute does not provide for such prospective unconditional coverage, and it is unlikely that the parties who negotiated the automatic coverage benefit anticipated such a possibility.

[¶ 13]   Accordingly, the judgment of the Superior Court is affirmed, except that the portion that holds Rule 601 invalid and exempts Goodrich from paying the back premiums, retroactive to the date of first eligibility, is vacated.   This matter is remanded to the Superior Court for entry of a judgment vacating the decision of the Maine Public Employees Retirement System Board of Trustees in accordance with this opinion.

The entry is:

Judgment vacated in part as provided in this opinion;   otherwise affirmed.   Remanded to the Superior Court for remand to the Maine Public Employees Retirement System Board of Trustees with instructions to provide Goodrich with basic group life insurance coverage as provided in this opinion.

---

8.   The employer's responsibility for this unfortunate state of affairs is beyond the scope of this proceeding and could be otherwise addressed by joining the employer as a party on remand or the commencement of an independent proceeding against the employer to address these issues.

9.   By the same token, the System is also blameless.   The statute places no affirmative duty upon the System to notify new employees of the availability of the basic insurance; indeed, the statute places the onus upon the employee to complete an application.   In any event, blameworthiness is not relevant to the issues presented in this matter.