MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2014 ME 26
Docket:        BCD-13-212
Argued:        October 9, 2013
Decided:       February 20, 2014

Panel:         ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.
Majority:      ALEXANDER, LEVY, MEAD, and GORMAN, JJ.
Dissent:       SILVER, J.

KENNEBEC COUNTY

v.

MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM

ALEXANDER, J.

[¶1]  Kennebec County appeals from a judgment entered in the Business and Consumer Docket (*Horton, J.*) that affirmed a decision of the Board of Trustees for the Maine Public Employees Retirement System (MPERS).  The Board had implicitly or explicitly concluded that: (1) MPERS had authority to adjudicate claims that some County employees were inadequately advised of their option to join MPERS at the time the employees were initially hired long before the employees began efforts to join MPERS; (2) at each employee's initial hiring, the County was obligated to adequately apprise its employees of MPERS's existence, their eligibility to participate in the MPERS retirement plan, and the terms of the plan; and (3) the County had failed to meet that obligation with respect to certain employees.

2

[¶2]  Based on those conclusions, the Board ordered the County to pay the local government contribution, with interest, and the interest on each employee's contribution, for the many years between when these employees were hired full-time and when they were found to have been informed of their eligibility to enroll in MPERS.  We conclude that MPERS and its Board lacked statutory authority to decide the inadequate advice at hire claims, and therefore vacate the judgment.[1]

## I.  CASE HISTORY

[¶3]  Kennebec County has been a Participating Local District (PLD) in the Maine Public Employees Retirement System, formerly the Maine State Retirement System, since 1951.  At all times relevant to this appeal, eligible County employees have had the option of joining MPERS.  After an employee joins MPERS, the County pays a local share and the employee provides the member contribution of the total cost of membership in MPERS.  The County also has a "Social Security 218 Agreement," and, since 1982, has offered Social Security coverage to County employees.  The County joined the Consolidated Retirement Plan for PLDs in 1995.

---

[1]  The County presented additional arguments on appeal that, given our holding in this case, we do not reach.

[¶4] There is no dispute that some County employees hired between 1985 and 2002 were informed by County personnel, at the time of hire, of their option to elect to participate in MPERS. Information about employee enrollment in MPERS was also disseminated from time to time through memoranda to County department heads or other means. However, Kennebec County did not have a standardized system for disseminating MPERS information to newly hired employees and for documenting elections to join or not join MPERS until 2002.

[¶5] After a MPERS staff member made a presentation to County employees in February 2008, three employees hired full-time by Kennebec County—one in 1986, one in 1987, and one in 2000—informed MPERS that they had not been informed about their eligibility to join the retirement system.[2] In response to a March 2008 inquiry by MPERS staff, the County reported that, although it could produce no specific documentation showing that those employees had been offered enrollment in MPERS, the County had conducted an investigation and concluded, based on the evidence it had obtained, that the petitioning employees had been informed of their eligibility for MPERS membership when they were hired.

---

[2] A fourth County employee, involved at the administrative hearing level, is not involved in this appeal.

4

[¶6]   MPERS staff informed Kennebec County that, unless it provided documentary evidence that the employees had been informed of their eligibility to join the retirement system and that the employees had declined participation, the County would be responsible for back employer contributions and interest for these, and any other similarly situated, employees if they elected to enroll in MPERS.   The County could not provide documentation satisfactory to MPERS staff regarding information that had been provided to the petitioning employees when they were hired twenty-two, twenty-one, and eight years previously.   The County requested that MPERS's Executive Director review the MPERS staff's determination in December 2008.[3]

[¶7]  The Executive Director issued an initial decision in January 2009 and a final decision in August 2009 in favor of MPERS.  The County appealed from the Executive Director's decision to MPERS's Board of Trustees.   The Board appointed a hearing officer to hold an evidentiary hearing and prepare a recommended final decision.  *See generally* 5 M.R.S. § 17106-A (2013).   Among other issues, the County argued before the Board that MPERS lacked jurisdiction to decide the employee election issues.

[¶8]   After holding an evidentiary hearing in February 2010, the hearing officer issued an initial report in favor of the County in June 2010, recommending

---

[3]  The Executive Director's designee conducted the review at that time.

that the Executive Director's decision be reversed. However, following a communication from the Board's legal counsel suggesting that the County employees at issue be offered an opportunity to participate in the proceedings, the hearing officer held additional hearings in December 2010 to take evidence from the County and its employees. The hearing officer then issued a redrafted report and recommended decision in June 2011 and a final report and recommended decision in August 2011, finding in favor of MPERS.

[¶9]   The recommended decision required Kennebec County to pay to MPERS the County's share of each employee's retirement contributions from the date each employee was hired full-time to the date he or she was found to have been informed of his or her MPERS eligibility, plus interest on both employer and employee contributions for that period.[4]  On November 28, 2011, the Board essentially adopted the hearing officer's factual findings and recommendations.[5]

---

[4] One employee at issue enrolled in MPERS for a short period in 2008, ceased making contributions, and reenrolled in 2010, and the other two employees enrolled in MPERS in 2010.

[5] Specifically, the Board concluded that County employees had a statutory right pursuant to "5 M.R.S. § 18252" to participate in the retirement system, and, accordingly, the County was obligated under State and federal law to "adequately apprise its employees of the existence of MainePERS, their eligibility and the terms of the plan," although "the County was not required to provide written documentation that it informed its employees of MainePERS eligibility." The Board also found that the County had failed to inform the three individual employees of their eligibility to participate in MPERS when they were hired, although they were informed at later dates, and concluded that the County was responsible for paying past employer contributions and interest on both member and employer contributions for those employees for the period between their dates of hire and when those employees were informed, or was presumably informed in the case of one employee, of their eligibility.

6

[¶10]  Pursuant to M.R. Civ. P. 80C, the County petitioned for review of the Board's decision by the Superior Court.  The case was accepted for transfer to the Business and Consumer Docket, and the court affirmed the Board's decision, entering a judgment in favor of MPERS.  The County filed this timely appeal pursuant to 5 M.R.S. § 11008 (2013) and M.R. App. P. 2.

[¶11]  Kennebec County argues on appeal that MPERS and the Board lack statutory authority, pursuant to 5 M.R.S.A. §§ 18252 and 18252-A,[6] to decide disputes relating to information about opportunities to join the retirement system that was or was not given to County employees when they were hired.  The County asserts that section 18252, interpreted in conjunction with section 18252-A, leaves the final administrative decision-making with respect to these matters to the PLD and suggested at oral argument that the remedy, if any, for local employees is a complaint or grievance with the County.  The County also argues that 5 M.R.S. § 17103(6) (2013), authorizing the Board to make final administrative decisions over certain matters, only grants review authority over decisions affecting MPERS "members," while the matters here involve employees who were not members at the time and did not become members until, in some cases, more than twenty years after the alleged inadequate notice occurred.

---

[6] The County does not specify the applicable dates of the statutes to which it cites.

## II. LEGAL ANALYSIS

A. Standards of Review

[¶12] When the Superior Court acts in its appellate capacity pursuant to M.R. Civ. P. 80C, we review the decision of MPERS's Board of Trustees directly "for legal errors, an unsustainable exercise of discretion, or unsupported findings of fact." *McClintock v. Me. Pub. Emps. Ret. Sys.*, 2010 ME 65, ¶ 8, 1 A.3d 431. "The party seeking to overturn the Board's decision bears the burden of persuasion on appeal." *Id.*

B. The Relevant Statutes

[¶13] The issue before us is a matter of statutory interpretation. Four statutory provisions are at issue: 5 M.R.S. § 18252 (2008) and (2009),[7] as in effect in 2008 and 2009 when MPERS and the Board initiated their respective decision-making processes in this matter; 5 M.R.S. § 18252-A(2)(C), (D) (2013); 5 M.R.S. § 17103 (2013); and 5 M.R.S. § 17001(14)(A), (C), (20) (2013).[8] We address each in turn.

---

[7] Title 5 M.R.S. § 18252 (2008), reporting amendments made by both P.L. 2007, ch. 490, § 1 (emergency legislation effective March 7, 2008), and P.L. 2007, ch. 491, § 191 (effective June 30, 2008), was repealed and replaced by P.L. 2009, ch. 415, § A-5 (emergency legislation effective June 17, 2009) (codified at 5 M.R.S. § 18252 (2009)). Section 18252 was subsequently amended by P.L. 2009, ch. 474, § 31 (effective July 12, 2010), and P.L. 2011, ch. 449, §14 (effective Sept. 28, 2011). The changes effected by these amendments and enactments are not material to our limited analysis of this section.

[8] Title 5 M.R.S. §§ 17001(14)(A), (C), (20), 17103, and 18252-A(2)(C), (D) have not been amended in any way material to our analysis since 2008, and we therefore cite to the 2013 volume of the Maine Revised Statutes. *See, e.g.*, P.L. 2009, ch. 322, §§ 2-4 (effective Sept. 12, 2009) (amending 5 M.R.S. § 17103 (2008)).

[¶14]   Title 5 M.R.S. § 18252 addressed enrollment and membership in MPERS by employees of PLDs that, like Kennebec County, offer Social Security coverage to their employees.[9]  Title 5 M.R.S. § 18252 did not include any specific authorization for the Board or MPERS to review and decide the employee notice and enrollment matters at issue in this case.  We must therefore look to other sections of the retirement laws to discern the Legislature's intent and to determine if MPERS's view that it and its Board have authority to administratively decide employee enrollment election disputes is reasonable.  *See Goodrich v. Me. Pub. Emps. Ret. Sys.*, 2012 ME 95, ¶ 6, 48 A.3d 212.  MPERS suggests that its authority to review the County action may be imported from 5 M.R.S. § 18252-A(2)(C), (D).

[¶15]   Title 5 M.R.S. § 18252-A(2)(C) and (D) addresses membership for employees of PLDs that, unlike Kennebec County, do not offer a Social Security coverage option but do offer a qualified defined contribution or deferred compensation retirement plan pursuant to 5 M.R.S § 18252-B (2013).  In contrast to section 18252, which is silent on the matter, paragraphs (C) and, more particularly, (D) of section 18252-A(2) explicitly authorize MPERS and its Board to make final administrative decisions related to employee plan participation and membership, in matters in which authority is not otherwise explicitly delegated to

---

[9]   The parties agree that section 18252 applies to the County.  As noted above, the County transferred into the Consolidated Retirement Plan for PLDs in 1995.  Statutory provisions relevant to local districts participating in the consolidated plan are found at 5 M.R.S. §§ 18801-18806 (2013), but the parties do not contend that those provisions affect the applicability of 5 M.R.S. § 18252 to the County.

the PLD, when there is no Social Security participation option. Paragraphs (C) and (D) state:

> **C.** The participating local district employer is responsible for providing procedures by which employees make elections under this section, for maintaining all records relevant to the election process and each employee's elections, for informing the retirement system as to employee elections in accordance with procedures established by the executive director and for making all administrative decisions, including the final administrative decision, in any dispute related to an employee's elections or administrative decision, in any dispute related to an employee's elections or to any issue as to the plan provided by the employer under section 18252-B. Neither the retirement system nor the system's board of trustees has responsibility or jurisdiction to make the final administrative decision with respect to any of these matters. The retirement system is responsible only to ensure that its records accurately reflect the information provided by the employer, the employer's decision as to any of these matters, and the legally cognizable outcome of any dispute related to any of these matters.
>
> **D.** With respect to matters related to participation and membership other than those specified in paragraph C, the retirement system and the board retain responsibility and authority according to applicable retirement system law and rules as to the participating local districts and their employees to whom this section applies, including the authority to make final administrative decisions.

[¶16] Pursuant to section 18252-A(2)(C), which does not apply to Kennebec County, the PLD is explicitly granted—and MPERS and its board are explicitly denied—responsibility for making "all administrative decisions, including the final administrative decision, in any dispute related to an employee's elections or administrative decision . . . ." MPERS and the Board are, however, granted authority to make final administrative decisions "[w]ith respect to matters related

to participation and membership other than those specified in paragraph C" for PLDs that do not offer Social Security coverage to their employees. 5 M.R.S. § 18252-A(2)(D). Section 18252-A thus establishes a comprehensive plan for allocating authority among the PLD, MPERS, and the Board in a variety of situations.[10]

[¶17] The third statutory provision at issue, 5 M.R.S. § 17103, establishes the general parameters of the Board's responsibilities and authority, granting broad authority to oversee numerous aspects of the operation of the retirement system. 5 M.R.S. § 17103(1), (2), (4), (5), (7); *see Me. Sch. Admin. Dist. No. 27 v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 108, ¶ 26, 983 A.2d 391 (stating that "given the overall administrative regulatory scheme [for governing the retirement system], it is reasonable to infer that a power to enforce is implicit within the overall regulatory scheme").

[¶18] General administrative review authority is provided by 5 M.R.S. § 17103(6), which states, in relevant part, "The board shall in all cases make the final and determining administrative decision in all matters affecting the rights, credits and privileges of all members of all programs of the retirement system whether in participating local districts or in the state service." 5 M.R.S. § 17103(6); *see also* 5 M.R.S. § 17103(7)(B) (referencing the Board's authority to

---

[10] *See generally* 5 M.R.S. § 18252-A(3)(B) (2013) (stating that section 18252-A does not apply to employees of PLDs whose membership in MPERS is optional pursuant to 5 M.R.S. § 18252 (2013)).

determine "the rights, credits or privileges of an individual member or group of members" in an adjudicatory proceeding pursuant to the Maine Administrative Procedure Act). Thus, section 17103(6) establishes the Board's authority to decide matters relating to the rights, credits, and privileges of "members."

[¶19] A "member" is defined as "any person included in the membership of a retirement program of the retirement system, as provided in chapter 423, subchapter 2 [relating to state employees and teachers], or chapter 425, subchapter 2 [relating to PLDs]." 5 M.R.S. § 17001(20). In contrast, an "employee" is defined as " a state employee, including . . . a participating local district employee," without reference to MPERS membership. 5 M.R.S. § 17001(14)(A), (C). The fact that the terms "member" and "employee" are separately defined indicates that they are not intended to be used interchangeably in the statute.

C.    Applying the Statutes to this Case

[¶20] We review the interpretation of a statute de novo, looking first to the statute's plain language to give effect to the Legislature's intent, considering the language in the context of the whole statutory scheme "to avoid absurd, illogical, or inconsistent results." *Eagle Rental, Inc. v. State Tax Assessor*, 2013 ME 48, ¶ 11, 65 A.3d 1278; *Goodrich*, 2012 ME 95, ¶ 6, 48 A.3d 212. By including specific and comprehensive administrative review provisions in section

18252-A(2)(C) and (D), the Legislature presumably identified a need for such provisions with respect to PLDs that do not offer Social Security to their employees and do offer qualified defined contribution or deferred compensation plans. If these provisions, addressed primarily to protections for "employees," were held to be duplicated by the general review provisions regarding "members" in section 17103(6), portions of section 18252-A(2)(C) and (D) would in effect be rendered statutory surplusage. Such interpretations, as with viewing the terms "member" and "employee" as interchangeable, are to be avoided. *See Allied Res., Inc. v. Dep't of Pub. Safety*, 2010 ME 64, ¶ 15, 999 A.2d 940 ("All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed.").

[¶21] Thus, we cannot construe the review provisions in section 18252-A(2)(C) and (D) to be imported into section 18252. *See Aydelott v. City of Portland*, 2010 ME 25, ¶ 12, 990 A.2d 1024 (observing that, when one section of a law or act contains particular language that another does not, the contrast suggests an intentional distinction by the Legislature). Given section 18252's lack of specific review provisions, we must infer that the Legislature made a choice that section 17103(6), the statutory scheme's general provision concerning authority and jurisdiction, applies to PLDs, like the County, that offer Social Security coverage. *See McPhee v. Me. State Ret. Sys.*, 2009 ME 100, ¶ 23, 980 A.2d 1257

("Statutory construction is a holistic process: we construe the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved.").

[¶22] Section 17103(6) expressly confers upon the Board authority to decide matters relating to the rights, credits, and privileges of "members," and not "employees."[11]

[¶23] The three employees at issue in this appeal dispute whether the County offered them enrollment in MPERS or provided adequate information to them about their eligibility for participation in the retirement system when they were hired. Enrollment in MPERS was, for these employees, optional. *See* 5 M.R.S.A. §§ 18251(1), 18252 (1989 & Supp. 2000); 5 M.R.S.A. § 1092(5-A) (Supp. 1986).[12] Therefore, even if we were to take an expansive view of what it would mean to be a "member," those employees cannot be deemed to have been "included in the membership of a retirement program of the retirement system," unless and until they actually enrolled. 5 M.R.S. § 17001(20); *cf., e.g., Me. Sch. Admin. Dist. No. 27*, 2009 ME 108, ¶ 2, 983 A.2d 391.

---

[11] Title 5 M.R.S. § 17001 (2013) states that the terms in that section "have the following meanings," "unless the context otherwise indicates." We conclude that the context of section 17103(6) does not otherwise indicate that the word "member" has any meaning other than as that term is defined in 5 M.R.S. § 17001(20).

[12] Title 5 M.R.S.A. § 1092(5-A) was repealed by P.L. 1985, ch. 801, § 2 (effective Jan. 1, 1987). Title 5 M.R.S.A. §§ 18251, 18252 was enacted by P.L. 1985, ch. 801, § 5 (effective Jan. 1, 1987).

14

[¶24] The dispute concerning the employees' enrollment elections at the time of their hire, or at any time prior to being informed of their eligibility to enroll in MPERS, thus arose when these individuals were PLD employees, but were not MPERS members.[13] Accordingly, we conclude that the Board did not have authority to make final administrative decisions with respect to the enrollment election matters arising as much as twenty-two years earlier, when the PLD employees were not "members" of MPERS. We likewise do not find support for MPERS's authority in this matter. *See, e.g.*, 5 M.R.S. § 17105 (2013) (setting forth the duties of the executive director); *McPhee*, 2009 ME 100, ¶¶ 20-21, 980 A.2d 1257 (noting the limits of the executive director's authority in deciding matters pursuant to the statute relating to a qualified domestic relations order and the resulting limitation on the Board's review of that decision).[14]

---

[13] Contrary to MPERS's implied contention, the fact that the three employees at issue in this appeal ultimately enrolled in MPERS in 2010, becoming "members" then, does not confer authority on the Board to decide the enrollment matters at issue here when that authority did not exist at the time giving rise to the disputes.

[14] We express no opinion on what impact, if any, the provisions of 5 M.R.S. § 17054-A (2013) might have on our decision if that section were applicable, because section 17054-A, enacted by P.L. 2009, ch. 474, § 12 (effective July 12, 2010), was effective after MPERS and the Board assumed jurisdiction over the issues giving rise to this appeal, albeit before the Board issued its final administrative decision. Section 17054-A states:

> Employers are responsible for providing procedures by which employees for whom membership in the retirement system is optional make a membership election, for maintaining all records relevant to the election process and an individual employee's election and for informing the retirement system as to employee elections in accordance with procedures established by the executive director. . . . With respect to matters related to participation and membership in the retirement system other than those specified in this section, the retirement system and the board retain responsibility and authority according

[¶25]   To hold otherwise could invite MPERS to adjudicate claims to membership entitlement by employees who joined PLDs twenty or thirty years ago and who never became members of MPERS or who became members of MPERS only at the end of their careers and then invoked a lack of notice claim to seek to win benefits for the entire term of their careers.  The Legislature could not have intended such a result, inviting inconsistent and speculative decision-making, reliant on faded memories and imprecise or discarded records of events twenty or thirty years in the past.[15]

[¶26]   Employees of PLDs that offer Social Security coverage are not without a remedy, however.  Employees alleging that their PLD has failed to inform them of their eligibility to participate in MPERS may pursue administrative or collective bargaining grievance procedures and initiate independent action

---

to applicable retirement system law and rules as to the employer and the employees to whom this Part applies, including the authority to make final administrative decisions.

We do not apply this statute to the case at hand. *See* 1 M.R.S. § 302 (2013) ("[P]roceedings pending at the time of the passage, amendment or repeal of an Act . . . are not affected thereby."); *Morrill v. Me. Tpk. Auth.*, 2009 ME 116, ¶ 5, 983 A.2d 1065 ("[A]ll statutes will be considered to have a prospective operation only, unless the legislative intent to the contrary is clearly expressed or necessarily implied from the language used."); *cf. Me. Sch. Admin. Dist. No. 27 v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 108, ¶ 25, 983 A.2d 391 ("When a statute does not alter existing rights or obligations, but merely clarifies what those existing rights and obligations have always been, the statute is not retroactive in its operation." (alterations omitted)).

[15]  Title 5 M.R.S. § 17451 (2013) does not alter our conclusion.  Section 17451 provides that "[a]ny person aggrieved by a decision or ruling of the executive director may appeal the decision or ruling to the board."  We do not view section 17451 as conferring subject matter jurisdiction to the Board in this case; it is the procedural mechanism authorizing the Board to consider appeals from decisions of the executive director that were properly before the executive director.

16

directly against the employer, subject to any statutes of limitation or rules of repose that may be applicable.

The entry is:

> Judgment vacated. Remanded to the Business and Consumer Docket for entry of a judgment vacating the Board's decision and remanding the matter to the Board with instructions to the Board to dismiss the matter for want of jurisdiction.

---

SILVER, J., dissenting.

[¶27] I respectfully disagree with the Court's interpretation of 5 M.R.S. § 17103(6) (2013). The plain language of the statute grants the Board the authority to make a final administrative decision in all matters affecting the rights, credits, and privileges of all members of the retirement system. I discern no statutory basis for limiting the Board's authority based on when the members at issue joined the System. Because I conclude that the Board properly exercised jurisdiction, I would reach the merits of the Board's decision, and would affirm.

A. The Board's Authority

[¶28] As the Court notes, 5 M.R.S. § 18252 (2013), which applies to Kennebec County because the County offers employees a choice between Social Security and MPERS membership, offers no guidance concerning the extent of the Board's authority to make final decisions in matters involving enrollment and

election procedures. Thus, we must look to section 17103, which outlines the Board's authority and responsibilities. This section provides that "[t]he board shall in *all cases* make the final and determining administrative decision in *all matters* affecting the rights, credits and privileges of *all members* of all programs of the retirement system[.]" 5 M.R.S. § 17103(6) (emphasis added).

[¶29] The Court dismisses the fact that all three employees involved in this case are current MPERS members, pointing out that they were not members at the time of the incidents that gave rise to these proceedings. The plain language of section 17103 requires no such inquiry into when the members joined the System. On the contrary, it unambiguously provides that the Board has the authority to hear *all* matters concerning members' rights, credits, and privileges.

[¶30] Administrative bodies are statutory in nature; they have only "such powers as those expressly conferred on them by the Legislature, or such as arise therefrom by necessary implication to allow carrying out the powers accorded to them." *Hopkinson v. Town of China*, 615 A.2d 1166, 1167 (Me. 1992). We look to the plain meaning of a statute's language to give effect to the legislative intent, and if the meaning of the statute is clear, we need not look beyond the words themselves. *Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903. The Court, however, raises concerns about the Board's ability to effectively adjudicate cases like this one, suggesting that the Legislature could not have

intended to grant the Board jurisdiction to hear cases involving employees who were hired decades before becoming members because such cases are extremely difficult to decide due to the loss of evidence over time. Court's Opinion ¶ 25. Although this is certainly a fair observation, it is well beyond the scope of the plain language of section 17103 and does not provide a legitimate basis for limiting the scope of the board's statutory authority.

[¶31]  Such policy concerns also do not render a plain reading of the statute absurd or illogical. *See Cent. Me. Power Co. v. Devereux Marine, Inc.*, 2013 ME 37, ¶ 8, 68 A.3d 1262 ("[W]e construe the statutory language to avoid absurd, illogical, or inconsistent results."). "Overall, the Board has long been charged with [t]he general administration and responsibility for the proper operation of the retirement system *and for making this chapter [governing the retirement system] effective.*" *Me. Sch. Admin. Dist. No. 27 v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 108, ¶ 26, 983 A.2d 391 (quotation marks omitted) (emphasis and alterations in original).

[¶32]  Section 17103 provides broad authority for the Board to make final administrative decisions about members' rights and credits. Determining whether an employer must make back contributions to MPERS for several current members falls squarely within the authority granted by the statute. *See id.* ¶ 27 ("The assessment of late fees for delinquent payments, especially assessment for interest,

affects the rights of the employee members.") This reading of section 17103 does not conflict with any other provision, and it is consistent with the statutory scheme providing "broad authority and discretion to the Board in managing [MPERS]." *Id.* There is no reason to conclude that the plain language of the statute does not reflect the Legislature's intent. Thus, the Board had jurisdiction to decide whether Kennebec County was required to make back contributions with interest on behalf of current members as a result of its earlier failure to provide adequate election procedures.

B.      Whether Employers Must Inform Employees About MPERS

[¶33]  When the administration of a statute has been entrusted to an agency by the Legislature, we defer to the agency's interpretation and application of the statute. *City of Augusta v. Me. Labor Relations Bd.*, 2013 ME 63, ¶ 14, 70 A.3d 268. When the statute is "silent or ambiguous on a particular point, we will review whether the agency's interpretation of the statute is reasonable and uphold its interpretation unless the statute plainly compels a contrary result." *Goodrich v. Me. Pub. Emps. Ret. Sys.*, 2012 ME 95, ¶ 6, 48 A.3d 212. "[W]e do not attempt to second-guess the agency on matters falling within its realm of expertise." *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991).

[¶34]  The Board interpreted section 18252 to require employers like the County to provide new employees with information about their eligibility for

membership in MPERS and the terms of the program. The Board reasoned that the statutory language providing that eligible members may elect to join the program "implies a right to participate in the plan," which in turn "obligates the County to adequately apprise its employees of the existence of [MPERS], their eligibility and the terms of the plan."

[¶35]  The Board's interpretation of section 18252 is reasonable, and the statutory language does not compel a contrary result.  Although the County argues that the Board's interpretation imposes too burdensome a requirement on employers who also offer Social Security coverage to their employees, the argument that the Board impermissibly applied the more stringent requirements of 5 M.R.S. § 18252-A (2013) is unpersuasive.  Section 18252-A, which applies only to PLDs that do not provide Social Security coverage and is therefore inapplicable to the County, enumerates specific steps employers are required to take, including providing employees with information, implementing procedures for making elections and informing MPERS of employees' elections, and making administrative decisions concerning these matters.  5 M.R.S. § 18252-A(2)(B), (C) (2013).

[¶36]  Contrary to Kennebec County's arguments, this does not necessarily mean that employers covered by section 18252 have *no* obligation to inform employees about their eligibility to participate in MPERS.  The County concedes

that section 18252, by implication, imposes some duty to provide information about the availability of membership in MPERS. Because the Board's interpretation of this provision of the State Retirement System statute is reasonable, we must defer to it.

C.    The Board's Factual Findings

[¶37]   This Court will affirm the Board's factual findings if they are supported by substantial evidence in the record, even if the record contains inconsistent or contrary evidence. *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 13, 989 A.2d 1128.

[¶38]   Kennebec County contends that the Board erred in finding that the three employees were not informed of their eligibility to participate in MPERS when they were hired.[16]   However, each of the employees testified that the County had not offered them enrollment in MPERS when they were hired, and that the benefits were never explained to them. This evidence, despite being contradicted by other evidence in the record, is sufficient to support the Board's findings.

D.    Whether the Board's Interpretation Retroactively Imposes a New Rule

[¶39]   Administrative clarification of a PLD's existing rights and obligations is permissible; it is not retroactive in effect. *Me. Sch. Admin. Dist. 27*, 2009 ME

---

[16]   Much of Kennebec County's argument on this issue, however, focuses on the assertion that the standard the Board applied was too high, and that the evidence the County presented was sufficient to meet the lower standard the County argued was appropriate.

22

108, ¶ 28, 983 A.2d 391. Interpreting a statute's plain meaning does not constitute pronouncing a new rule. *See id*. ¶ 25. Section 18252 requires that employees be given a meaningful choice whether to elect to join MPERS. That the Superior Court observed that "an employer subject to section 18252 fails to document at its peril" does not indicate that the Board has announced a new rule requiring employers to keep detailed records of election procedures. Rather, it is a commonsense observation that, absent such documentation, it may be difficult for an employer to prove that it has complied with the modest notice requirements of section 18252. The County's argument that the Board has impermissibly announced a new rule that is not promulgated by statute or regulation is unpersuasive.

[¶40] For these reasons, I would affirm the judgment of the Superior Court on the merits.

_____

**On the briefs:**

Warren C. Shay, Esq., Perkins, Townsend, Shay & Talbot, P.A., Skowhegan, for appellant Kennebec County

Janet T. Mills, Attorney General, and James M. Bowie, Asst. Atty. Gen., Office of Attorney General, Augusta, for appellee Maine Public Employees Retirement System

**At oral argument:**

Warren C. Shay, Esq., for appellant Kennebec County

James M. Bowie, Asst. Atty. Gen., for appellee Maine Public Employees Retirement System

Business and Consumer Court docket number AP-2012-11
FOR CLERKS REFERENCE ONLY