STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-AP-12-11

*AMH – KEN – 4/8/2013*

KENNEBEC COUNTY,

    Petitioner,

       v.

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM,

    Respondent

)
)
)
)
)
)
)
)
)
)
)
)
)
)

✓

## DECISION AND ORDER

In this appeal of state agency action under Rule 80C of the Maine Rules of Civil Procedure, Petitioner Kennebec County (the "County"), appeals from a decision of the Maine Public Employees Retirement System (the "System") Board of Trustees' (the "Board").

In its November 28, 2011, Decision and Order, the Board affirmed, in part, the January 20, 2011, final decision of the System's Executive Director's Designee ("EDD"). The Board determined the County had a responsibility to offer System membership to its employees, and that the County had failed to meet that responsibility with respect to three County employees.[1] The Board concluded the County was responsible for payment of past employer contributions and interest on both employee and employer contributions for each of the employees should they elect to enroll in the System.

---

[1] The EDD ultimately concluded the County was responsible for back contributions to the Maine Public Employees Retirement System for four of its employees, but the Board affirmed as to only three of the four employees. The fourth employee is not part of this appeal.

1

The State of Maine provides retirement benefits to eligible public employees through a pension plan administered by the System. The Legislature created the retirement program to attract and retain qualified employees for public service. 5 M.R.S. § 17050 (2012). The System offers eligible public employees retirement savings plans with favorable tax treatment. 5 M.R.S. § 17053 (2012). The Board is responsible for overseeing the administration and proper operation of the System. 5 M.R.S. §17103(1) (2012).

Municipalities and counties may elect to have their employees participate in the System by becoming a Participating Local District (PLD). *See* 5 M.R.S. §§ 17001(19), (27) (2012) (defining local district and PLD); 5 M.R.S. §§ 18201 & 18804 (2012) (explaining how a local district becomes a PLD). In 1990, the Legislature established the Consolidated Retirement Plan for Participating Local Districts (the Plan), *see* P.L. 1989, Ch. 811, § 3 (effective April 10, 1990) (codified at 5 M.R.S. §§ 18801-06 (2012)), and the County joined the Plan in 1995 (R. 6.74). Employees of PLDs may also be covered by Social Security, and System and Plan membership is optional for employees in PLDs that also offer Social Security coverage. 5 M.R.S. §§ 18251(3)(D), 18252 (2012).

Section 18252 governs PLDs that also offer Social Security coverage; section 18252-A governs PLDS that do not offer Social Security coverage. 5 M.R.S. §§ 18252, 18252-A (2012). The County, however, offers Social Security coverage to its employees and thus is governed by section 18252. The statute provided,[2] at the relevant time period:

> An employee who is or would be covered by the United States Social
> Security Act as a result of employment by a participating local district having a

---

[2] There have been numerous amendments to the statutes governing the System in the relevant time period. The parties agree, however, that section 18252, which is the key statutory provision, did not change substantively between 1985 and 2000. All further references to section 18252 are to the 2000 version as contained in the 2002 edition of the Maine Revised Statutes Annotated. Also relevant to this appeal is section 18252-A; references to section 18252-A are to the 2000 version as contained in the 2002 edition of the Maine Revised Statutes Annotated. The Court otherwise cites to the relevant statutes currently in effect.

so-called "Social Security Section 218 agreement" may elect to join, not to join or to withdraw from the retirement system under the following conditions.

> **1. New employees.** A new employee may join the retirement system at the beginning of employment or at any time after beginning employment, so long as he is still an employee of the participating local district and the district continues to be a participating local district.

5 M.R.S.A. § 18252 (2002).

## FACTUAL BACKGROUND

On July 1, 1951, the County became a local district within the System. (R. 14.198.) County employees have Social Security under a "218 Agreement," (R. 18.1.), and since 1982, their membership in the System has been optional pursuant to section 18252. The County has offered a deferred compensation program administered by the Aetna insurance company as an alternative to participation in the System. (R. 1.56.)

In February 2008, the System conducted a benefits presentation for County employees. (R. 77.11; 53.66). After the presentation, four County employees, hired between 1985 and 2000, sent letters to the System stating the County had not informed them of their membership eligibility and inquiring into the possibility of purchasing credit for previous service with the County. (R. 77.11.) In a March 2008 letter, the System informed the County it had received letters from four County employee claiming they had not been offered membership when hired and asked the County to confirm whether the four employees had been offered membership (R. 77.12.) The County responded that it had no specific documentation to demonstrate whether the employees were told they could join the System when they were hired. (R. 77.12.) Instead, the County asked the System to review additional, general evidence that all four employees had been informed of their right to join the System. (R. 1.5.) The County offered the following evidence:

3

- On August 25, 1995 and again on August 31, 2000, County Commissioners distributed a memorandum to all department heads describing the retirement options available to employees. (R. 77.7.)

- On September 9, 1994, during a presentation to County employees, an Aetna case manager informed County employees that those not enrolled in the System were eligible to enroll in the Aetna deferred compensation plan on a matching basis. (R. 77.7.)

- On September 12, 1994, the County Commissioners sent a memorandum to all department heads informing them of amendments made to union contracts. Because of those amendments, all County employees would have a choice of retirement options, which included System benefits. (R. 77.7.)

- The County Commissioner sent a letter to the System stating that conversations with former clerks who were responsible for enrolling employees for membership revealed that "all employees, including the [four] employees, were offered membership when they were hired."3 (R. 77.12.)

- Other employees who were hired around the same dates as the four employees at issue in this case had enrolled in the System, and three of the four employees chose other retirement plan options. (R. 1.63.)

- Finally, in 2002, the County implemented procedures to document whether an employee was offered membership. (R. 14.8-14.9).

The Retirement Services Supervisor reviewed the County's evidence and concluded that the County failed to provide sufficient documentation to support its assertion that the four employees had been offered System membership.4

In December 2008, the County asked the Executive Director's Designee (EDD) to review the supervisor's findings. The County argued that neither section 18252 nor section 18252-A required the County to "document either the notification to employees of the existence of [the System] or to document any choices made by the employees." (R. 1.28.) The County

---

3 One County clerk served from the 1970s to the late 1980s or early 1990s (R. 77 6.) The current clerk since 2002, testified that the former clerk recalled offering two of the employees membership when they were hired. The former clerk, however, declined to sign an affidavit, and the two employees testified the clerk had never informed them of their right to join the System. (R. 77.11.) Another former clerk, who served from 1998 to 2004, recalled to the current clerk that she offered membership to the employee hired in June 2000. (R. 77.11.)

4 The supervisor relied on 5 M.R.S. § 18251 (2009), and stated that this section "make[s] clear that employees for whom membership is optional are to make an election . . . [and w]ithout documentation of the election, neither the employee nor the employer can demonstrate that this requirement has been met." (R. 1.35.)

4

further asserted that the question of whether the County was required to offer its employees System membership had been settled 2002. (R. 1.29.) In 2002, the System requested information from the County as to whether it had offered System membership to an employee who was attempting to purchase credit based on past service toward retirement from the System. (R. 14.87.) The County produced no documentation it had offered or had not offered membership to the employee; the employee was permitted to purchase credit for past service, but the System did not then seek back contributions from the County or alert the County that it was required to offer membership. (R. 14.88 to .92.)

On January 27, 2009, the EDD issued an initial decision. (R. 1.5.) The EDD stated that the crucial question was whether employees were offered membership. (R. 1.5.) The EDD concluded the "absence of documentation establishing or even indicating that the employer complied with its statutory obligation to offer membership to the four employees [was] nettlesome to the [County's] position." (R. 1.6.) The EDD also addressed the 2002 incident, stating that the decision was based on the individual facts then before the System and was not dispositive on the current matter. (R. 1.29.)

The EDD reviewed the County's additional evidence and arguments and rendered a final decision. (R. 77.2.) He concluded that the County was required to offer membership to those four employees but failed to do so. (R. 77.2.) Thus the County was required to pay past employer contributions and interest on both employee and employer contributions for each of the employees should they elect to enroll in the System. (R. 77.2.)

The County appealed the Executive Director's decision to the Board pursuant to 5 M.R.S. § 17451 (2012). On February 22, 2010, the parties appeared before a hearing officer appointed by the Board. (R. 77.2.) Several county witnesses testified, but the System did not present witnesses. (R. 77.2.) In her initial decision, the hearing officer recommended that the

5

Board reverse the EDD's decision and find the employees ineligible for retroactive membership benefits. (R. 21.1.) On July 2, 2010, the hearing officer forwarded her recommendation to the appeals clerk to distribute for comment. (R. 77.2.)

The appeals clerk asked the Board's counsel whether the four employees affected by the decision should also receive copies of the recommended decision, as they had not participated in the hearing. (R. 77.2.) In response, the Board's counsel sent a letter to the hearing officer on June 8, 2010, expressing his concern that the four employees had not been given an opportunity to participate in the proceeding. (R. 77.2.) The Board's counsel did not forward a copy of this letter to the County at the same time he sent it to the hearing officer. (R. 68.1 to .3; *see also* Pet. Br. 17.) The County did not learn about the communication between the Board's counsel and the hearing officer until it read the report dated June 24, 2011. (R. 65.2 to .3; 68.1 to .3.)

On July 16, 2010, the Board notified the four employees of the proceedings and gave them the case record. (R. 23.11 to .13.) These four became intervenors and the hearing officer reopened the hearing to allow the four to submit testimony and to allow the County and System to offer rebuttal evidence. (R. 77.3.) The County objected to the inclusion of the four employees as parties to the appeal, but the County's objection was overruled. (R. 77.3.) A second day of hearings was held on December 16, 2010, and the four employees as well as Terry York, the current Kennebec County Clerk, testified. (R. 77.3.)

On January 20, 2011, the EDD confirmed his original decision to the effect that the County was required to offer System membership to the four employees and had failed to establish it had done so, and therefore was responsible for paying employer contributions as well as interest on employer and employee contributions. (R. 59.1).

In June 2011, the hearing officer disseminated a report dated June 24, 2011, for comment among the parties. (R. 65.1 to .15.) The parties provided their comments (R. 68.1-

6

70.2), and the hearing officer issued her final report on August 8, 2011, along with her response to the parties' comments (R. 71.1-72.2).

The Board adopted the hearing officer's August 8, 2011 recommended decision on November 28, 2011, with some changes. (R. 77.2 to .16.) The Board concluded the EDD's decision was consistent with the established policy of the System, which required the County, as a Participating Local District, to advise its employees of their eligibility for membership in the System and provide information on the terms of the Plan. (R. 77.13.) The Board also concluded that holding the County responsible for back payments was consistent with relevant federal laws as well as with the System's authority to collect monies and employ means appropriate to carry out its authority. (R. 77.13.) This appeal followed.

## DISCUSSION

### I. STANDARD OF REVIEW

In an appeal of a final agency action pursuant to M.R. Civ. P. 80C and 5 M.R.S. § 11007 (2012), the court reviews an agency's decision "for error of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Goodrich v. Me Pub. Emps.' Ret. Sys.*, 2012 ME 95, ¶6, 48 A.3d 212. The court will "not attempt to second-guess the agency on matters falling within its realm of expertise" and judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering, Inc. v. Sup't of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). The party seeking to vacate the agency's decision has the burden of proving the agency's decision is clearly erroneous. *Douglas v. Bd. of Trs. of the Me. State Ret. Sys.*, 669 A.2d 177, 179 (Me. 1996).

A court will not overturn the agency's fact-finding unless the party seeking to overturn the agency's decision demonstrates that the administrative record compels a contrary result "to the exclusion of any other inference." *Id.* at 179. The court must affirm findings of fact if, on

7

the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551, 555. A court is not entitled to substitute its judgment for that of the agency, "merely because the evidence could give rise to more than one result." *Dodd v. Sec. of State*, 526 A.2d 583, 584 (Me. 1987); *accord* 5 M.R.S. § 11007(3). Rather, the court may consider only whether "the agency's decision is supported by substantial evidence on the whole record." *Dodd*, 526 A.2d at 584.

Finally, with respect to interpretation, a court will interpret a statute according to its plain meaning, without examining legislative history or giving deference to the Board's construction. *See Whitney v. Wal-Mart Stores, Inc.*, 2006 ME 37, ¶ ¶ 22-23, 895 A.2d 309; *Dombkowski v. Ferland*, 2006 ME 24, ¶ 22, 893 A.2d 599 (explaining that the court's ultimate objective when interpreting a statute is to "effectuate the intent of the Legislature, which is ordinarily gleaned from the plain language of the statute"). In doing so, a court will consider the language in the context of the whole statutory scheme and construe the statute to avoid absurd, illogical, or unreasonable results. *See FPL Energy Me. Hydro LLC*, 2007 ME 97, ¶ 12, 926 A.2d 1197. "When a statute administered by an agency is silent . . . on a particular point," the court "review[s] whether the agency's interpretation of the statute is reasonable and [must] uphold its interpretation unless the statute plainly compels a contrary result." *Goodrich*, 2012 ME 95, ¶ 6, 48 A.3d 212.

II.     ANALYSIS

The County first argues that that the System does not have jurisdiction to make administrative decisions in a dispute relating to an employee's election to become a member of the System. Second, the County argues that the Board erred when it determined that Kennebec County was required to offer System membership to employees, a rule which the Board had not formulated or announced prior to the County's actions in this case. Third, the County argues

that the 2002 incident equitably estops the System from assessing back contributions against the County. Next, the County maintains that it did, in fact, offer System membership to the three employees and the factual findings are contrary to the record. Finally, the County argues that the Board's decision should be reversed because the Board, through its counsel, interfered with the hearing process and violated its own established procedures.

A.    System Jurisdiction and Authority

The County first argues the System, does not have jurisdiction to determine whether the County adequately apprised its employees of their membership rights or pay back contributions and interest into the System. (Pet. Br. 8.)

The Board is responsible for overseeing the administration and proper operation of the System. 5 M.R.S. § 17103(1) (2012); *MSAD 27 v. Me Pub. Emp. Ret. Sys.*, 2009 ME 108, ¶26, 983 A2d 391. In *MSAD 27*, the Law Court stated that the Board "has long been charged with the general administration and responsibility for the proper operation of the retirement system and for making [the System laws] effective." *Id.* (quoting 5 M.R.S.A. § 1031(a) (Supp. 1972) and 5 M.R.S.A § 17103(1) (2008)). Moreover, the Board has broad authority to "in all cases [to] make the final and determining administrative decision in all matters affecting the rights, credits and privileges of all members . . . in participating local districts . . . ." 5 M.R.S. § 17103(6) (2012). Finally, the Board has the authority to collect back contributions plus interest from the County when it improperly applies System statutes and rules. 5 M.R.S. § 17154(9) (2012).

In support of its jurisdictional argument, the County points to section 18252-A(2)(C), which explicitly strips the Board of jurisdiction "to make final administrative decision[s]" with regards to matters enumerated in the section. 5 M.R.S.A. § 18252-A(2)(C) (2002). The problem with the County's argument is that section 18252-A does not apply to it because the

9

County has chosen to offer Social Security to its employees. Any exclusion from the Board's jurisdiction within section 18252-A has no bearing on the Board's jurisdiction pursuant to section 18252. Moreover, the fact that the Legislature explicitly stripped the Board of jurisdiction in certain defined circumstances indicates that the Board would have otherwise had jurisdiction to hear those matters. The Board was therefore within its jurisdiction to address the present dispute between the County and its employees based on section 18252 and to order the County to pay back contributions and interest against the County for its failure to carry out its responsibilities as a PLD.

B.     The Board's Interpretation of 5 M.R.S.A. § 18252

The central issue in this case is whether the County, as a PLD, was required to inform its employees of their right to membership in the System. Key to this issue is the interpretation of section 18252, which provides, in relevant part:

> A person who is or would be covered by the United States Social Security Act as a result of employment by a participating local district with Social Security coverage may elect to join, not to join, to cease contributions to or to withdraw from the retirement system under the following conditions.
>
> **1. New employees.** A new employee may join the retirement system at the beginning of employment or at any time after beginning employment, so long as he is still an employee of the participating local district and the district continues to be a participating local district.

5 M.R.S.A. § 18252 (2002). The County also relies on section 18252-A(2) for its arguments, which parallels section 18252 and provided:

> **2. District employer responsibilities.** Responsibilities of the participating local district employer are as follows.
>
> . . . .
>
> **B.** The participating local district employer is responsible for providing employees with information as to membership under the Participating Local District Retirement Program and as to coverage under the plan provided by the employer under section 18252-B to assist the employee in making election decisions. . . .

10

> **C.** The participating local district employer is responsible for providing procedures by which employees make elections under this section, for maintaining all records relevant to the election process and each employee's elections, for informing the retirement system as to employee elections in accordance with procedures established by the executive director . . . .

5 M.R.S.A. § 18252-A(2)(B) & (C) (2002).

The County argues it did not have a duty to offer each employee membership in the System for three reasons. First, it notes, section 18252, which applies to districts with Social Security coverage, like the County, does not expressly state the County is required to communicate information about the System to its employees. (Pet. Br. 8.) Thus, the County concludes, in the absence of express language in section 18252, it did not have a statutory duty to offer membership to its employees.

The County further asserts, in contrast to section 18252, the parallel section 18252-A, applicable to PLDs without Social Security coverage, provides enumerated responsibilities for employers, including the responsibility to provide information to each employee about their eligibility and to provide procedures for each employee to make an election. In addition, the County notes, language in section 18252-A(3)(B) explicitly excludes section 18252 PLDs from the application of section 18252-A. (Pet. Br. 7.) The County concludes that by reading the two statutes together, one can derive a clear intent by the Legislature to exempt PLDs with Social Security coverage from the requirements imposed on those PLDs without Social Security coverage.

Second, the County asserts, even if section 18252 imposes some obligation on the County to apprise its employees of the existence of System benefits, this obligation imposes on the County a much lesser burden than PLDs without Social Security coverage. (Reply Br. 8.) This lesser burden, the County argues, only requires that the County apprise its employees of

11

the existence of the System, as a group and, therefore, it is not required to offer benefits to each employee or else to provide written documentation to show that it offered such information. (Pet. Br. 9.) The County maintains the Board is holding it to the same requirements imposed on PLDs without Social Security coverage.

Finally, the County contends, the System did not provide advance notice, either by statute or regulation, to the County that it was required to provide information about System membership directly to each employee. (Pet. Rep. Br. 10.) Thus, the County contends, application of the Board's interpretation of section 18252, as requiring the County to provide information about System membership to each employee it hired between 1985 and 2000, would be improperly retroactive. (Reply Br. 10-11.) To support this contention the County cites *Tenant's Harbor General Store, LLC v. Department of Environmental Protection*, 2011 ME 6, 10 A.3d 722, for the proposition that the Board is prohibited from applying rule that is not promulgated by statute or regulation.

In its decision, the Board agreed with the County that section 18252-A is inapplicable to the County, and instead concluded the County, as a PLD, has a duty to inform its employees of their right to join the System pursuant to section 18252. The Board determined that the language of section 18252, which states that employees "may elect to join" the System, implies that employees have a right to participate in the Plan. (R. 77.12.) That right, the Board concluded, requires the County, as a PLD, to "adequately apprise its employees of the existence of [the System], their eligibility and the terms of the plan." (R. 77.12.) The Board further observed that "[a]lthough the County was not required to provide written documentation that it informed its employees of [their System] eligibility, it was nonetheless, required to provide the information to employees." (R. 77.12.) The Board explained its decision was consistent with relevant laws as well as the established policy of the System: "[o]nce a local district

12

achieves PLD status, it must offer MSRS membership to all eligible employees and provide those employees with information about membership and coverage." (R. 77.4 (quoting Town of Bethel and Robert Pilgrim, No. 2006-053, Decision at 6 (Me. State Ret. Sys. Bd. of Trs. Apr. 12, 2007 (interpreting section 18252))); R. 77.13.)

Section 18252 expressly states that employees "may elect to join" the System. While section 18252 is silent as to whether employees must be advised of their right to elect to join, this court agrees with the Board's interpretation that notice is implied. The right to elect to join would be meaningless if the County failed to advise employees, when they were hired, of their right to make that election. The Board's reading of section 18252, requiring the County to give timely notice to employees of their right to join the System, is therefore reasonable. *See Goodrich,* 2012 ME 95, ¶ 6, 48 A.3d 212. The County's arguments based on the language of section 18252-A, which does not apply, do not render the Board's interpretation of section 18252 any less reasonable.

On its face, section 18252 does not prescribe the detailed obligations that section 18252-A imposes upon PLDs without Social Security coverage, but that does not mean section 18252 imposes no obligation on the County. Notice required by section 18252 must be sufficient to permit each employee to make an informed and timely choice to elect or not to elect System membership. Section 18252 does not require documentation of notice in the way that section 18252-A does, but an employer subject to section 18252 fails to document at its peril.

Nothing in section 18252 renders the Board's interpretation contrary to the legislation's purpose. *See Tenant's Harbor General Store, LLC v. Dept. Envtl. Prot.,* 2011 ME 6, ¶ 16, 10 A.3d 722. Rather, the Board's conclusion is consistent with the overall purpose of the System, which is "to encourage qualified persons to seek public employment and to continue in public employment during their productive years." 5 M.R.S. § 17050. Accomplishing this objective

13

necessarily requires that a PLD provide information to employees about their eligibility for System membership to enable an employee to make a meaningful choice.

Finally, by holding the County to its responsibility, as a PLD, to provide its employees with information so they can make a meaningful choice to join the System, the Board was interpreting an existing statute that was in effect at all relevant times, and not retroactively applying a new standard. The Law Court has stated:

> As part of its adjudicative responsibility, the Board had the obligation to apply the statute that was at issue in the proceeding. When a party to an agency adjudicative proceeding raises a question about a statute's meaning or scope and the statute is one administered by the agency, the agency must interpret it if the interpretation is necessary to the adjudicative decision. Agencies are not required to promulgate rules defining every statutory term that might be called into question. They are expected to apply statutes within their expertise as cases arise.

*Cobb v. Bd. of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 24, 896 A.2d 271; *accord Fryeburg Health Care Ctr. v. Dep't of Human Servs.*, 1999 ME 122, ¶ 9, 734 A.2d 1141.

The County fails to recognize that at all relevant times the employees have always had the right to receive notice pursuant to section 18252. An interpretation of a statute's plain meaning is not the announcement of a new rule. *See Sears, Roebuck & Co. v. State Tax Assessor*, 2012 ME 110, ¶¶ 11-12, 52 A.3d 941. Moreover, to the extent that the Board clarified existing rights and obligations of PLDs in *Town of Bethel and Robert Pilgrim*, No. 2006-053, (Me. State Ret. Sys. Bd. of Trs. Apr. 12, 2007), such clarification is permissible and not retroactive in effect. *See MSAD 27*, 2009 ME 108, ¶ 25, 983 A.2d 39 (citing *Levy v. Sterling Holding Co.*, 544 F.3d 493, 506 (3d Cir. 2008)) ("[W]here a new rule constitutes a clarification—rather than a substantive change—of the law as it existed beforehand, the application of that new rule to pre-promulgation conduct necessarily does not have an impermissible retroactive effect . . .").

14

C.      Equitable Estoppel

The County argues that the issue regarding its responsibility to offer membership to each employee first arose in 2002. In 2002, the System sent a letter inquiring about the contributions of an employee unrelated to the present proceedings. The County argues that this letter and the System's decision to not assess back contributions against the County established a "course of conduct" and that the System is therefore equitably estopped from reversing course. (Pet. Br. 15 (citing *Berry v. Bd. of Trs.*, 1994 Me. Super. LEXIS 176, at *15 (Apr. 28, 1994)).)

To prevail under its equitable estoppel claim, the County must show that it reasonably relied on the System's statements or conduct; that this reasonable reliance induced the County to act; and that as a result of such reliance the County suffered harm. *Mrs. T. v. Comm'r of the Dep't of Health & Human Servs.*, 2012 ME 13, ¶ 9, 36 A.3d 888; *Dep't of Health & Human Servs. v. Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630; *City of Auburn v. Desgrosseilliers*, 578 A.2d 712, 714 (Me. 1990). In an equitable estoppel claim, the court considers "the totality of the circumstances, including the nature of the government official or agency whose actions provide the basis for the claim and the governmental function being discharged by that official or agency." *Pelletier*, 2009 ME 11, ¶ 17, 964 A.2d 630. The County is not confined to the administrative record in asserting its equitable estoppel claim, as the agency did not have jurisdiction to grant equitable relief. *Berry v. Board of Trustees*, 663 A.2d 14, 18-19 (Me. 1995).

In this case the County has not established that it changed its position or failed to take certain action in reliance on the System's conduct. For whatever reason, the System decided not to "press the matter" in 2002 regarding whether the County was required to make back contributions for the employee who purchased credit. Regarding the questions of notice and documentation thereof that arise in this case, the County never asked them and the System

15

never answered them. Thus, nothing in the System's acts or omissions in connection with the 2002 matter induced a change of position in justifiable reliance on the part of the County. The court concludes, based on the totality of the circumstances, the County has not made out its equitable estoppel claim.

D.    The Board's Factual Findings

The County asserts that it provided sufficient notice to the employees' right to join the System and that the Board's findings on this point are not supported by the evidence. The four employees all stated they were not offered System membership by the County when they were hired. Conflicting testimony was offered and the hearing officer commented on the difficulty of "reconstructing events of sometimes more than two decades ago." (R. 77. 14.) The four employees were hired at different times and different people dealt with new hires at different times and different policies were in effect at different times. (R. 77.14.) The Board determined the County failed to show it had a consistent practice from 1986 to 2000 of offering System membership to its employees when they began employment. In fact, the County's own evidence showed that forms and procedures changed over the years. (R. 18.6). While the County produced evidence to show that other, informed employees actually joined the System, the evidence also showed that other employees were given no information about their rights to join. (R.18.6.)

The court's role is not to reevaluate the evidence; the court is only to determine if the findings are supported by substantial evidence in the record. *See Friends of Lincoln Lakes*, 2010 ME 18, ¶ 14, 989 A.2d 1128. Although the evidence was conflicting, the Board's finding that the four employees were not offered System membership is supported by substantial evidence on the record. *See Concerned Citizens to Save Roxbury*, 2011 ME 39, ¶ 24, 15 A.3d 1263.

16

E.    Ex Parte Communication and Procedural Violations

The County argues the Board's decision should be reversed because the Board's counsel engaged in ex-parte communication with the hearing officer after the latter had disseminated her initial decision which recommended overturning the EDD's final decision. (Pet. Br. 17.) The ex parte communication the County refers to is the letter the Board's counsel wrote to the hearing officer stating his concern that the recommendation would become final without recorded participation of the four employees, which may cause them to be "unfairly . . . precluded from appealing the decision or from otherwise seeking retroactive membership." (R. 21.2.)

The County argues the conduct of the Board's counsel violated 5 M.R.S. § 17106-A(4) (2012) because the Board's counsel did not also send a copy of the letter to the County when he sent it to the hearing officer. The County asserts it did not receive a copy of the letter or have knowledge of its transmittal until it was noted in the hearing officer's second decision, dated June 24, 2011. (Pet. Br. 17.) The County further contends that the Board violated 5 M.R.S. § 17106-A(2) (2012) because the ex parte communication influenced the hearing officer's final decision, because the hearing officer held a new hearing with the four employees as intervenors, which ultimately resulted in her finding the County responsible for employer contributions and employer and employee interest. (Reply Br. 14.)

Title 5 M.R.S. §§ 17106-A(2) and (4) provide:

**2. No direct or indirect influence.** A party to the appeal, including the appellant, the board, the executive director or the staff of the board may not exert direct or indirect influence on a hearing officer with regard to decisions of the hearing officer or the decision-making process.

. . . .

**4. Discussion of issues before the hearing officers.** All parties to an appeal, including the appellant, the board, the executive director and the retirement system staff are prohibited from ex parte communication with the hearing officer. All parties, including the appellant, the board, the executive

17

director and the retirement system staff are prohibited from initiating or engaging in any discussion with a hearing officer regarding the substance of any pending case without first making all parties aware of the proposed contact and without also giving all parties the opportunity to participate in any communication.

5 M.R.S. § 17106-A (2009)

After the first hearing, the hearing officer forwarded her recommendation to each of the parties for comment. The counsel's letter to the hearing officer was consistent with this practice of allowing the parties to comment on the hearing officer's recommendations. The error was not the counsel's letter to the hearing officer. Rather, the error resulted from Board counsel's failure to "mak[e] making all parties aware of the proposed contact and without also giving all parties the opportunity to participate in any communication, as required by 5 M.R.S. § 17106-A(4).

Moreover, the hearing officer should have alerted the County and other parties immediately to the communication. The inappropriate ex parte nature of the communication, coupled with the fact that the County only learned of it months later, fueled legitimate suspicion by the County as to the fairness of the proceedings.

Although this court does not endorse the failure of the Board's counsel and the hearing officer to apprise all parties immediately of the communication between them, the County has not shown how it has been prejudiced by the inappropriate ex parte communication. What the County lost was the opportunity to object immediately to the employees' participation. That objection, had it been lodged, would almost certainly have been to no avail. As the County acknowledged at oral argument, even had the question of the employees' participation been raised later, at the Board level, as it certainly would have been by the Board's counsel, the Board would have and, in the court's view, should have allowed the employees to participate.

In that sense, participation by the employees was inevitable, and the fact that it resulted

18

from Board counsel's letter instead of from action by the hearing officer *sua sponte* or the Board itself did not prejudice the County in any way.

Moreover, the County was not prejudiced by the manner by which the employees were allowed to participate as intervenors. The County had ample opportunity to rebut any evidence presented by the employees at the second hearing. Thus, the court cannot say that the ex parte communication influenced the decision of the hearing officer in this case and made the ultimate judgment unfair to any party. *See New England Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 448 A.2d 272, 280 (Me. 1982) (ex parte communications did not "violate basic principles of fairness and due process of law").

F.      The Board's Choice of Remedy

The Board's choice of remedy—to require the County to pay in to the System the employer contribution with respect to any of the three of employees who elect to join, along with interest on the employer and employee contributions—is appropriate. The three employees may join the System if they pay in the total of the contributions they would have paid since entering the County's employ, less interest thereon. This is both equitable and consistent with the System's statutory authority.

*CONCLUSION*

Based on the entire record, this court affirms the Board's decision. The County had a responsibility to inform its employees of their membership rights. The County failed to satisfy the Board that it had informed three employees of their right to become members, and the Board's determination to that effect was supported by substantial evidence. The County is responsible for payment of past employer contributions and interest on both employee and employer contributions for the employees, should they elect to enroll in the System. The Board's determinations are well within its jurisdiction, because it is responsible for overseeing

19

the administration of the System and has the responsibility to make the final administrative decision in all matters affecting the rights of all members in participating local districts. 5 M.R.S. § 17103(6). Finally, the ex parte communication was harmless because no prejudice resulted to the County.

IT IS ORDERED: The appeal of Petitioner Kennebec County is denied. Judgment is hereby awarded to Respondent Maine Public Employees Retirement System, along with any recoverable costs.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Dated April 8, 2013

A. M. Horton
Justice, Maine Business & Consumer Court

Entered on the Docket: 4.8.13
Copies sent via Mail __ Electronically ✓

20

BCD-AP-12-11

Kennebec County (Petitioner) v. Maine Public Employees Retirement System (Respondent)

Counsel for Petitioner:

Warren Shay, Esq.
Perkins, Townsend, Shay & Talbot, P.A.
Attorneys at Law
48 Court Street
P.O. Box 467
Skowhegan, ME 04976-0467

Counsel for Respondent:

Walter McKee, Esq.
Walter F. McKee
Attorney at Law
McKee Law, P.A.
133 State Street
Augusta, Maine 04330

James M. Bowie, AAG
Assistant Attorney General
Office of the Maine Attorney General
6 State House Station, Augusta, ME 04333